# EXHIBIT A
## TO FOURTH AMENDED STIPULATION AND AGREEMENT OF SETTLEMENT

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE RELAFEN ANTITRUST LITIGATION | Master File<br>No. 01-CV-12239-WGY |
| THIS DOCUMENT RELATES TO END-PAYOR ACTIONS: | |
| *Lynch v. SmithKline Beecham Corp.* | No. 02-CV-10163-WGY |
| *A.F. of L. - AGC Building Trades Welfare Plan v. SmithKline Beecham Corp.* | No. 02-CV-10205-WGY |
| *Twin Cities Bakery Workers Health and Welfare Fund v. SmithKline Beecham Corp.* | No. 02-CV-985 (E.D. Pa.) |
| *Houchins v. SmithKline Beecham Corp.* | No. 02-CV-10424-WGY |
| *Teamsters Local No. 35 Health Plans v. SmithKline Beecham Corp.* | No. 02-CV-10487-WGY |
| *Smithfield Foods, Inc. v. SmithKline Beecham Corp.* | No. 02-CV-10589-WGY |
| *Franklin v. SmithKline Beecham Corp.* | No. 02-CV-10671-WGY |
| *Fox v. SmithKline Beecham Corp.* | No. 02-CV-11543-WGY |
| *Kravitz v. SmithKline Beecham Corp.* | No. 02-CV-11806-WGY |

# [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFYING CLASS FOR PURPOSES OF SETTLEMENT, DIRECTING NOTICE TO THE CLASS AND SCHEDULING FAIRNESS HEARING

WHEREAS, this matter has come before the Court pursuant to *End-Payor Plaintiffs' Motion for Preliminary Approval of Proposed Settlement, Certification of Class for Purposes of Settlement, and Approval of Form and Manner of Notice* (the "Motion"); and

WHEREAS, the Court finds that it has jurisdiction over these actions and each of the parties; and

WHEREAS, this Court has conducted a hearing on November 10, 2004 and is otherwise fully advised in the premises;

IT IS HEREBY ORDERED THAT:

## Preliminary Approval of Settlement Agreement

1.      The terms of the Fourth Amended Stipulation and Agreement of Settlement dated November 18, 2004, including all Exhibits thereto (the "Stipulation"), attached to the Motion, are hereby preliminarily approved, subject to further consideration thereof at the Fairness Hearing provided for below. This Order incorporates herein and makes a part hereof, the Stipulation, including the Exhibits thereto. Unless otherwise provided herein, the terms defined in the Stipulation shall have the same meanings herein. The Stipulation between the End-Payor Plaintiffs, and defendants GlaxoSmithKline PLC, SmithKline Beecham Corporation, d/b/a GlaxoSmithKline, Beecham Group PLC and SmithKline Beecham, PLC (collectively "GSK" and/or "Defendants"), was entered into at arm's-length by experienced counsel. The Court finds that the settlement embodied in the Stipulation (the "Settlement") is sufficiently within the range of reasonableness so that notice of the Settlement should be given as provided in paragraphs 5 through 10 of this Order.

2.      The Court preliminarily finds that the proposed End-Payor Class, for the purpose of this Settlement only, meets all the applicable requirements of Rule 23(a) and (b)(3) of the Federal Rules of Civil

Procedure, and hereby conditionally certifies the following Class for settlement purposes only:

> All persons or entities in the United States who purchased Relafen and/or its generic alternatives (known as nabumetone) during the period of September 1, 1998 through June 30, 2003 for consumption by themselves, their families, members, employees, insureds, participants, or beneficiaries.

The class conditionally certified for settlement purposes only includes the following states or group of states:

> Group I States:  All person or entities in District of Columbia and the states of Arizona, California, Illinois, Iowa, Massachusetts, Nebraska, Nevada, South Dakota, Tennessee, Vermont, West Virginia and Wisconsin, as well as the State Employment and Retiree Health and Welfare Benefit Program of Maryland, who purchased Relafen and/or its generic alternatives (known as nabumetone) during the period of September 1, 1998 through June 30, 2003, for consumption by themselves, their families, members, employees, insureds, participants, or beneficiaries. .

> Group II States:  All persons or entities in the territories of the United States and the states of Alabama, Alaska, Arkansas, Colorado, Connecticut, Delaware, Georgia, Idaho, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Montana, Missouri, New Hampshire, New Jersey, Ohio, Oregon, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Texas, Utah, Virginia, Washington and Wyoming who purchased Relafen during the period of September 1, 1998 through June 30, 2003, for consumption by themselves, their families, members, employees, insureds, participants, or beneficiaries.

> Group III States:  All persons in the states of Florida, Maine, Michigan, Minnesota, North Carolina and North Dakota who purchased Relafen and/or its generic alternatives (known as nabumetone) during the period of September 1, 1998 through June 30, 2003, for consumption by themselves, their families, members, employees, insureds, participants, or beneficiaries.

> Hawaii:  All persons in the State of Hawaii who purchased Relafen and/or its generic alternatives (known as nabumetone) during the period of September 1, 1998 through June 30, 2003, for consumption by themselves, their families, members, employees, insureds, participants, or beneficiaries.

> New York:  All persons in the State of New York who purchased Relafen and/or its generic alternatives (known as nabumetone) during the period of September 1, 1998 through June 30, 2003, for consumption by themselves, their families, members, employees, insureds, participants, or beneficiaries.

New Mexico: All persons in the State of New Mexico who purchased Relafen and/or its generic alternatives (known as nabumetone) during the period of September 1, 1998 through June 30, 2003, for consumption by themselves, their families, members, employees, insureds, participants, or beneficiaries.

Excluded from the class are governmental entities (provided, however, a governmental entity is included only to the extent it makes prescription drug purchases as part of a health benefit plan for its employees); Defendants and their officers, directors, management, employees, subsidiaries, and affiliates; persons or entities who purchased Relafen or its generic alternatives for purposes of resale; any person or entity whose only purchase(s) of Relafen were made directly from Defendants or its affiliates and/or whose only purchases of generic nabumetone were made directly from the manufacturer thereof; and persons or entities who suffered no economic harm as a result of Defendants' alleged conduct (the collectively, the "End-Payor Class").

3.      The Court hereby conditionally finds that the following End-Payor Plaintiffs are adequate representatives of the End-Payor Class:

(a)     Louise Houchins;
(b)     Elliot Franklin;
(c)     Tyler Fox;
(d)     Jennifer Kravitz;
(e)     Emily Feinberg;
(f)     Jacob Koivisto;
(g)     Patrick J. Lynch as Trustee for the Health and Welfare Fund and Retiree Health & Welfare Fund of the Patrolmen's Benevolent Association of the City of New York ("PBA Funds");
(h)     A.F. of L. – AGC Building Trades Welfare Plan;
(i)     Sheet Metal Workers Local 441 Health & Welfare Plan;
(j)     IBEW-NECA Local 505 Health & Welfare Plan;
(k)     Teamsters Local No. 35 Health Plans;
(l)     Twin Cities Bakery Workers Health & Welfare Fund;
(m)     Smithfield Foods, Inc.; and
(n)     Great Lakes Health Plan, Inc.

If the Stipulation is terminated or is not consummated for any reason whatsoever, the certification of the End-Payor Class shall be void, and End-Payor Plaintiffs and Defendants shall be deemed to have

reserved all of their rights to propose or oppose any and all class certification.

    4.     The Court further finds that the following attorneys fairly and adequately represent the

interests of the End-Payor Class and hereby appoints them as Class Counsel pursuant to Rule 23(g):

Thomas M. Sobol
HAGENS BERMAN, LLP
One Main Street, 4th Floor
Cambridge, MA 02142

J. Douglas Richards
MILBERG WEISS BERSHAD
& SCHULMAN, LLP
One Pennsylvania Plaza
New York, NY 10119-0165

Eugene A. Spector
SPECTOR, ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Samuel Heins
HEINS, MILLS & OLSON PLC
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

Patrick E. Cafferty
MILLER FAUCHER AND CAFFERTY LLP
101 North Main Street, Suite 450
Ann Arbor, MI 48104

## Notice to Potential Class Members

    5.     On or before February 21, 2005, Class Counsel shall: (a) cause the Summary Notice of

Pendency of Class Action, Proposed Settlement and Fairness Hearing ("Summary Notice") in the form

attached as Exhibit 2 hereto to be published in accordance with the Plan of Notice; (c) cause the Summary

Notice to be published on the website established for purposes of this Settlement; and (d) otherwise

implement the Plan of Notice

    6.     On or before February 7, 2005, Class Counsel shall cause copies of the Notice of

Pendency and Proposed Settlement of Class Action, Motion for Attorneys' Fees and Settlement Hearing,

substantially in the form attached as Exhibit 1 hereto (the "Notice"), as well as the Third-Party Payor Proof

of Claim Form and Third Party Payor Notice of Exclusion, attached as Exhibit 3 and Exhibit 4 hereto, to

be mailed by first-class mail, postage pre-paid, to all potential Third-Party Payor members of the End-Payor Class, to the extent that they can be identified with reasonable diligence. In addition, Class Counsel shall cause copies of the Notice and the Consumer Claim Form, attached as Exhibit 5 hereto, to be mailed to all members of the End-Payor Class who request a copy of the Notice, as set forth in the Plan of Notice.

7.  On or before May 11, 2005, Class Counsel shall serve and file or cause to be served and filed a sworn statement attesting to compliance with the provisions of paragraphs 5 and 6 of this Order.

8.  The Court appoints Complete Claim Solutions, Inc. as the Claims Administrator. Responsibilities of the Claims Administrator shall include the following: (a) establishing a post office box and toll-free phone number (to be included in the Notices to the Class) for purposes of communication with End-Payor Class members; (b) disseminating notice to the End-Payor Class; (c) establishing a website for purposes of posting the Notice, Stipulation and related documents; (d) accepting and maintaining documents sent from End-Payor Class members, including claim forms, exclusion requests and other documents relating to claims administration; and (e) administering claims for the allocation of damages among End-Payor Class members.

9.  After review of the proposed revised Plan of Notice submitted to the Court on November 18, 2004, the Court approves the expenditure of actual notice and administrative costs reasonably incurred for the purpose of providing notice to the End-Payor Class in accordance with the Notice Plan and in connection with the administration of this Settlement. The Escrow Agent is directed to pay such costs with notice to End-Payor Lead Counsel and GSK.

10. The notice to be provided as set forth in paragraphs 5 through 9 of this Order (the "Notice Provisions") is hereby found to be the best practicable notice under the circumstances and, when

completed, shall constitute due and sufficient notice of the Settlement and the Fairness Hearing to all

persons affected by and/or entitled to participate in the Settlement, in full compliance with the notice

requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

### Subpoena of Consumer Information

11.      The Court finds that the efforts of Plaintiffs to provide the most efficient administration of

the settlement with respect to consumer members of the Class may be enhanced by providing direct

payment to individual consumers for co-pays or cash payments they have made for Relafen or nabumetone

during the Class period.   End-Payor plaintiffs are hereby authorized, pursuant to 45 C.F.R. §

164.512(e)(1), to issue subpoenas to the ten largest providers of retail pharmacy services in the United

States as well as the mail-order pharmacies associated with the five largest providers of pharmaceutical

benefit management in the United States, to obtain access to electronic files of the names and addresses

of any consumers of Relafen and/or nabumetone as well as information concerning the consumer's

expenditures (net of any amount paid for or on behalf of the consumer by insurance or some other source)

during the Class period, *provided that*:

(a)      The Claims Administrator shall obtain only the names, addresses and payment

information necessary to identify users of Relafen and/or nabumetone and to calculate their total out-of-

pocket expenditures for Relafen and nabumetone, and shall not seek access to any other Protected Health

Information as that term is defined by the regulations implementing the Health Insurance Portability and

Accountability Act of 1996 (HIPAA).  The information obtained shall be held confidential and shall not be

released to any other person or entity except for a Business Associate of the Claims Administrator

necessary to administer the settlement..

7

(b)     Any names, addresses or payment information obtained through this paragraph shall be used only for the purpose of administering the settlement in this litigation, and not for any other purpose;

(c)     The Claims Administrator shall maintain the information received pursuant to this paragraph for a period of five (5) years or as otherwise ordered by the Court. At the end of five (5) years, or as ordered by the Court, it shall destroy any and all originals and copies of the information obtained through this paragraph, including electronic and hard copies; and shall ensure that any Business Associates do the same.

## Requests for Exclusion from the End-Payor Class

12.     Any member of the End-Payor Class who wishes to be excluded from the End-Payor Class shall mail a written notice of exclusion to the Claims Administrator, to be postmarked no later than April 15, 2005, and clearly state the following: the name, address, taxpayer identification number, telephone number and fax number (if any) of the entity that wishes to be excluded from the End-Payor Class. The notice of exclusion form included with the Notice can be used for this purpose. For commercial entities, the notice of exclusion must also include a signed certification containing the following language:

> The undersigned individual hereby represents that he/she has authority to sign and submit this notice of exclusion on behalf of the above-named class member. If the undersigned individual is not a duly authorized officer, director or employee of the above named class member (if a corporation), or a general partner or duly authorized employee of the above-named class member (if a partnership), he/she must attach written evidence of the class member's specific grant of authority to him/her to execute this notice of exclusion on its behalf.

> The undersigned also certifies that he/she has not received any advice from the parties to this litigation concerning his/her or the class member's fiduciary obligations under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1100, *et seq.*, or other laws governing their obligations to any class member. The undersigned understands that by submitting this notice of exclusion, the class member identified above will not be entitled to

receive any proceeds of the Settlement Fund. By affixing my signature below, I certify under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

13.     If the person providing a certification in the notice of exclusion is not a duly authorized officer, director or employee of the Third-Party Payor requesting exclusion (if a corporation), or a general partner or duly authorized employee of the Third-Party Payor requesting exclusion (if a partnership), he/she must attach written evidence of the Third-Party Payor's grant of authority to him/her to execute the notice of exclusion on its behalf.

14.     In addition, for purposes of implementing the Stipulation, including the calculation of the amount of any Settlement reduction and whether the termination contingency referenced in the Stipulation has been met, each Third-Party Payor requesting exclusion shall set forth in the Exclusion Form, by state or group of states, the amounts paid for Relafen and/or generic nabumetone purchases during the period September 1, 1998 through June 30, 2003.

15.     Such End-Payor Class members that submit valid and timely notices of exclusion shall not be bound by the Stipulation, the Settlement, or the Final Order and Judgment.

16.     Upon receipt, the Claims Administrator shall promptly provide copies of each notice of exclusion to Class Counsel and Counsel for Defendants.

17.     Any potential member of the End-Payor Class that does not properly and timely mail a notice of exclusion as set forth in paragraphs 11 through 15 above shall be automatically included in the End-Payor Class and shall be bound by all the terms and provisions of the Stipulation, whether or not such potential member of the End-Payor Class shall have objected to the Settlement and whether or not such potential member of the End-Payor Class makes a claim upon or participates in the Settlement Fund.

9

**Proofs of Claim**

18.     To effectuate the Settlement and the Notice Provisions, the Claims Administrator shall be responsible for the receipt of all notices of exclusion and Proofs of Claim. The Claims Administrator shall preserve all notices of exclusion, Proofs of Claim, and any and all other written communications from members of the Class in response to the Notice Provisions for a period of five (5) years, or pursuant to further order of the Court. All written communications received by the Claims Administrator from members of the Class relating to the Stipulation shall be available at all reasonable times for inspection and copying by Counsel to the Settling Parties.

19.     In order to be entitled to participate in the Settlement if it is effected in accordance with all of the terms and conditions set forth in the Stipulation, each member of the End-Payor Class shall take the following actions and be subject to the following requirements:

(a)     Each End-Payor Class Member that wishes to receive a distribution from the Settlement Fund must mail a properly executed Proof of Claim to the Claims Administrator at the address indicated in the Mail Notice, to be postmarked by the Claims Administrator on or before July 29, 2005 (subject to sub-paragraph 19(e) below). If a proof of claim is transmitted to the Claims Administrator by a method other than by use of the United States Postal Service, such Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator;

(b)     Each Proof of Claim must satisfy the following conditions: (i) the Proof of Claim must be properly completed in accordance with the instructions thereon and submitted in a timely manner in accordance with subparagraph (a) of this paragraph; (ii) the Proof of Claim must be signed and certified under penalty of perjury; (iii) if the person executing the Proof of Claim is acting in a representative

10

capacity, certification of such person's authority to act on behalf of the claimant must be furnished with the Proof of Claim; and (iv) the Proof of Claim must be complete and contain no material deletions or modifications of any of the printed matter contained therein;

(c)     Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, who shall make a recommendation to End-Party Lead Counsel about which claims should be allowed;

(d)     The Claims Administrator will notify each member of the End-Payor Class that filed a Proof of Claim of any recommendation of disallowance, in whole or in part, of the Proof of Claim submitted by such End-Payor Class member and will set forth the reasons for any such disallowance. End-Payor Class members shall be permitted a reasonable period of time to cure any deficiency with respect to their respective Proofs of Claim.  A copy of such notification shall also be sent by the Claims Administrator to Class Counsel;

(e)     All members of the End-Payor Class that do not submit timely Proofs of Claim, or submit Proofs of Claim that are disallowed, shall be barred from participating in the Settlement Fund (except to the extent that a Proof of Claim may be partially allowed or to the extent the Court orders payment to consumers based on information obtained pursuant to Paragraph 11 hereof) but otherwise shall be bound by all of the terms and provisions of the Stipulation; and

(f)     Each member of the End-Payor Class that submits a Proof of Claim and/or accepts any payment as part of the settlement, shall thereby expressly submit to the jurisdiction of the Court with respect to the claims submitted and/or paid, and shall (subject to final approval of the Settlement) be bound by all the terms and provisions of the Stipulation.

11

**Confidentiality**

20.     Any information received by the Claims Administrator in connection with this Settlement that pertains to a particular member of the End-Payor Class, or information submitted in conjunction with a notice of exclusion (other than the identity of the entity requesting exclusion), shall not be disclosed to any other person or entity other than Counsel to the Settling Parties, and the Court, or as otherwise provided in the Stipulation.

**The Fairness Hearing**

21.     A hearing on final settlement approval (the "Fairness Hearing") will be held on _____, 2005 at _____ before the Honorable William G. Young, United States District Court for the District of Massachusetts, One Courthouse Way, Boston, Massachusetts 02210, to consider, *inter alia*, the following: (a) whether the End-Payor Class should be finally certified, for settlement purposes only; (b) the fairness, reasonableness and adequacy of the Settlement, the dismissal with prejudice of this action as to the Defendants, and the entry of final judgment in the action; (c) whether Class Counsels' application for attorneys' fees, expenses and incentive awards for the named plaintiffs ("the Fee Petition") should be granted; and (d) whether to approve the proposed plan of allocation and distribution.

22.     On or before April 25, 2005, Class Counsel shall file with the Court: (i) any memoranda or other materials in support of final approval of the Settlement; and (ii) any Fee Petition.

23.     Any member of the End-Payor Class that has not filed a notice of exclusion in the manner set forth above may appear at the Fairness Hearing in person or by counsel and may be heard, to the extent allowed by the Court, either in support of or in opposition to the fairness, reasonableness and adequacy of the Settlement, the dismissal with prejudice of the action as to Defendants, the entry of final judgment,

and/or the Fee Petition; provided, however, that no person shall be heard in opposition to the Settlement, dismissal and/or entry of final judgment or the Fee Petition, and no papers or briefs submitted by or on behalf of any such person shall be accepted or considered by the Court, unless submitted to the Court and served upon Counsel for the Settling Parties on or before April 25, 2005. Such person must (a) file with the Clerk of the Court a notice of such person's intention to appear as well as a statement that indicates the basis for such person's opposition and any documentation in support of such opposition, and (b) serve copies of such notice, statement and documentation, as well as any other papers or briefs that such person files with the Court, either in person or by mail, and upon all Counsel to the Settling Parties on or before April 25, 2005. Persons who fail to object as provided herein shall be deemed to have waived and shall forever be foreclosed from raising any such objections.

24.     Counsel for the Settling Parties entitled to service of documentation described above are as follows:

Liasion Counsel for End-Payor Plaintiffs

Thomas M. Sobol
HAGENS BERMAN, LLP
One Main Street, 4th floor
Cambridge, MA 02142

Counsel for Defendants

Christine C. Levin
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103-2793

25.     The date and time of the Fairness Hearing shall be set forth in the Notice and Summary Notice, but shall be subject to adjournment by the Court without further notice to the members of the Class other than that which may be posted at the Court and on the Court's website.

26.     All discovery and other pretrial proceedings in this action among the Settling Parties are stayed and suspended, pending the Effective Date of the Settlement ("Final Approval"), except such proceedings as are provided for in the Stipulation, or which may be necessary to implement the terms of the Stipulation, the Settlement, or this Order.

27.     Any End-Payor Class Member may hire an attorney at his or her or its own expense to appear in the action. Such attorney shall serve a Notice of Appearance on the Counsel for the Settling Parties and file it with the Court on or before April 15, 2005.

28.     Pending Final Approval, no Class member, either directly, representatively, or in any other capacity (other than a Class Member who validly and timely elects to be excluded from the Class), shall commence or prosecute against any or all Releasees, any action or proceeding in any court or tribunal asserting any of the matters, claims or causes of action that are to be released by the Stipulation upon Final Approval, and, upon Final Approval, all Class members that do not file a timely notice of exclusion shall be forever enjoined and barred from asserting any of the matters, claims or causes of action released by the Stipulation, and any such Class member shall be deemed to have forever released any and all such matters, claims and causes of action as provided for in the Stipulation.

## Other Provisions

29.     The Court hereby approves the terms of the Escrow Agreement, attached as Exhibit C to the Stipulation.

14

30. The Court preliminarily approves the allocation and distribution of the Settlement Fund, as described in the Stipulation.

31. Upon Final Approval, each and every term and provision of the Stipulation shall be deemed incorporated herein as if expressly set forth and shall have the full force and effect of an Order of the Court.

32. In the event the Settlement is terminated with respect to Defendants or in accordance with the provisions of the Stipulation, the Settlement and all proceedings had in connection therewith shall be null and void, except insofar as expressly provided in the Stipulation, and without prejudice to the *status quo ante* rights of End-Payor Plaintiffs, Defendants, and the members of the End-Payor Class.

33. All proceedings in the action against Defendants are hereby stayed until such time as the Court renders a final decision regarding the approval of the Settlement and, if it approves the Settlement, enters final judgment as provided in the Stipulation. Neither this Order nor the Stipulation shall constitute any evidence or admission of liability by any Defendant, nor shall they be offered in evidence in this or any other proceeding except to consummate or enforce the Stipulation or the terms of this Order, or by any Releasee in connection with any action asserting Released Claims.

### Qualified Settlement Fund

34. The Court finds that the Settlement Fund is a "qualified settlement fund" as defined in section 1.468B-1(c) of the Treasury Regulations in that it satisfies each of the following requirements:

(a) The Settlement Fund is established pursuant to an order of this Court and is subject to the continuing jurisdiction of this Court;

15

(b)     The Settlement Fund is established to resolve or satisfy one or more claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liabilities; and

(c)     The assets of the Settlement Fund are segregated from other assets of GSK, the transferor of payments to the Settlement Fund.

35.     Under the "relation-back" rule provided under section 1.468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that:

(a)     The Settlement Fund met the requirements of paragraphs 11(b) and 11(c) of this Order prior to the date of this Order approving the establishment of the Settlement Fund subject to the continued jurisdiction of this Court; and

(b)     GSK and the Claims Administrator may jointly elect to treat the Settlement Fund as coming into existence as a "qualified settlement fund" on the later of the date the Settlement Fund met the requirements of paragraphs 11(b) and 11(c) of this Order or January 1 of the calendar year in which all of the requirements of paragraph 11 of this Order are met. If such relation-back election is made, the assets held by the Settlement Fund on such date shall be treated as having been transferred to the Settlement Fund on that date.

SO ORDERED this _____ day of _____ 2004.

_____
WILLIAM G. YOUNG
CHIEF JUDGE

16

# EXHIBIT 1

## TO [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re RELAFEN ANTITRUST LITIGATION | ) | **Master File No.** |
| | ) | **01-CV-12239-WGY** |
| This document relates to: End-Payor Actions | ) | |
| | ) | |

## NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION, MOTION FOR ATTORNEYS' FEES AND SETTLEMENT HEARING

*This Notice is about a proposed settlement of a class action lawsuit over the pricing of the brand name drug Relafen and its generic equivalent, nabumetone. You may be entitled to receive money from the Settlement.*

> **Deadline to File a Claim:** _____, 2005
>
> **Deadline to File an Objection to Settlement:** _____, 2005
>
> **Deadline to Opt Out of the Class:** _____, 2005

**PLEASE READ THIS NOTICE CAREFULLY**. It will tell you what the case is about, the terms of the settlement, what choices you have to make, and what you have to do to protect your rights. This notice explains to you certain deadlines, and encloses forms that allow you to file a claim or tell us that you don't want to be part of the Class. It will also tell you where you can get additional information and help.

Subject to the sufficiency of available funds based on the actual claims received, the Settlement anticipates (but does not guarantee) a minimum payment for purchases made in certain states by consumers who submit valid claims. Third Party Payors, such as health insurance plans and employee benefit plans, may be entitled to recover amounts they paid for Relafen or nabumetone purchases made by their plan participants.

**For more information, call the Claims Administrator toll-free at (888) 412-7419, or go to www.relafensettlement.com.**

**Why did I get this Notice?** You received this because records show - or because you believe - that you were a purchaser of the brand name drug Relafen or its generic version nabumetone during the period September 1, 1998 through June 30, 2003. You may be entitled to money as part of a

proposed Settlement of a lawsuit.  *You are not being sued.*

**What is the lawsuit about?**   Relafen is a brand name drug known as an anti-inflamatory.  It is generally prescribed for such conditions as chronic arthritis.  A number of consumers and Third Party Payors ("TPPs")(such as insurance companies and employee benefit plans) filed class action lawsuits against Defendants GlaxoSmithKline PLC, SmithKline Beecham Corporation d/b/a GlaxoSmithKline, Beecham Group PLC and SmithKline Beecham, PLC.

The lawsuits allege Defendants used lawsuits against their competitors to keep them from selling low-cost generic versions of Relafen.  Plaintiffs allege that as a result, Defendants could charge much higher prices for the drug and the Plaintiffs paid millions of dollars in overcharges.  *No question is raised about the safety or effectiveness of Relafen.*

Defendants deny that Plaintiffs' claims are true and dispute all of the allegations in the lawsuits, and Defendants believe that their conduct has at all times been lawful.  However, in order to resolve this litigation, Defendants have agreed to the Settlement described here.

On _____, 2004, the Court issued an Order giving preliminary approval of the Settlement and ordering that this Notice be sent out and the Settlement be publicized.

**Who is part of the Class?**   This Settlement covers the following group: All persons or entities in the United States who purchased Relafen and/or its generic alternatives (known as nabumetone) during the period of September 1, 1998 through June 30, 2003 for consumption by themselves, their families, members, employees, insureds, participants, or beneficiaries (the "Class").

Certain people are not part of the Class: (1) Defendants, their officers, employees, subsidiaries, affiliates; (2) government entities (provided, however, a governmental entity is included only to the extent it makes prescription drug purchases as part of a health benefit plan for its employees); (3) those who purchased Relafen or generic versions of the drug for purposes of resale; (4) those who purchased Relafen directly from Defendants or their affiliates; and (5) those who did not suffer economic harm as a result of Defendants' conduct.  A person did not suffer economic harm if, for example, he/she owed the same co-pay for brand-name and generic drugs, or he/she was reimbursed in full for all drug purchases. If you are not sure whether you are included, you may call the Claims Administrator toll free at (888)-412-7419 with questions.

**What are the terms of the Settlement?**      In essence, Defendants will pay to the Class $75 million, upon which interest will accrue, ("Settlement Fund") split as follows: $25 million for payments to consumers and $50 million for payments to TPPs, minus $8 million, which has been paid to a certain opt-out group called the Settling Health Plans ("SHPs" or "SHP Group") in order to resolve their

claims.[1] Under the Settlement, the Recognized Claim amount of consumer and third-party payor class members will be calculated based on purchases in various states, as follows:

| State of Purchase | Percentage of Relafen and Nambumetone Purchases[2] | Proposed Minimum Payment[3] |
|---|---|---|
| District of Columbia, Arizona, California, Illinois, Iowa, Massachusetts, Nebraska, Nevada, South Dakota, Tennessee, Vermont, West Virginia and Wisconsin | Consumer: 82.5%<br>TPP:       41.25% | $55 |
| Florida, Maine, Michigan, Minnesota, North Carolina and North Dakota | Consumer: 60%<br>TPP:       30% | $40 |
| Hawaii | Consumer: 90%<br>TPP:       45% | $100 |
| New Mexico | Consumer: 85%<br>TPP:       42.5% | $75 |
| New York | Consumer: 52.5%<br>TPP:       26.25% | $35 |

| State of Purchase | Percentage of Relafen Purchases[4] | Proposed Minimum Payment |
|---|---|---|

---

[1] An additional amount may be paid to this group from the Settlement Fund upon proof of its claim.

[2] These terms are defined in the Settlement Agreement and, taken together, refer to total amounts spent on Relafen and/or its generic alternatives (known as nabumetone) during the period of September 1, 1998 through June 30, 2003, less any payments from a prescription drug benefit plan or other insurance.

[3] Minimum payments are for consumers only, and only if there is enough money to pay them.

[4] Because of certain court rulings, purchases in these states may submit claims only for purchases of branded Relafen during the period of September 1, 1998 through June 30, 2003, not generic alternatives (known as nabumetone).

-3-

| Alabama, Alaska, Arkansas, Colorado, Connecticut, Delaware, Georgia, Idaho, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Montana, Missouri, New Hampshire, New Jersey, Ohio, Oregon, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Texas, Utah, Virginia, Washington, Wyoming and Territories of the United States. | Consumer: 9.2%<br>TPP:        4.6% | None (and pro rated claim must exceed $20 to qualify for payment)[5] |
|---|---|---|

These figures have been calculated based on an evaluation of the strength of claims, which vary by state, as reflected in the orders and opinions of the Court. If there is not enough money to make the proposed minimum payment, consumers will share in the available funds on a pro-rated basis in relation to the size of their Recognized Claim, although reduced minimum payments may be ordered by the Court. TPPs will also share the available funds on a pro-rated basis in relation to the size of their Recognized Claim. The costs of notice, administration and attorneys' fees and costs will also be paid out of the Settlement Fund, subject to approval by the Court.

The complete terms of the Settlement are in the Fourth Amended Stipulation and Agreement of Settlement ("Settlement Agreement") signed by the parties, a copy of which is available on the website, www.relafensettlement.com and is also on file with the Clerk, United States District Court for the District of Massachusetts, One Courthouse Way, Boston, Massachusetts 02210.

The lawyers for the Class have made a thorough investigation of the law and facts in this case. The parties have engaged in extensive arm's-length negotiations which resulted in this Settlement. In agreeing to the Settlement, Plaintiffs' lawyers considered the risk of going to trial, balanced against the substantial benefits to the Class which will occur as a result of the Settlement. Plaintiffs' lawyers concluded that the Settlement is fair, reasonable, adequate and in the best interests of the Class.

## DECISIONS YOU MUST MAKE NOW

**What are my choices as a Class Member?** You have a choice of whether to remain a member of the Class or whether to "opt out."

*If you remain a member of the Class*, you can fill out a Claim Form and send it to the Claims Administrator. If you meet the requirements of being a Class member, and the minimum purchase amount in certain states, your Claim Form will be approved and you will receive a check that is your share of the Settlement Fund. If you remain in the Class, you will be giving up all other claims against these Defendants in connection with Relafen or any form of nabumetone as fully set forth in the attached release. The release is in necessarily accurate legal language so read it carefully

---

[5] In addition, the sum of $500,000 has been set aside to provide indirect benefits to class members in the these states, at the discretion of the Court.

*If you decide to opt out of the Class*, you will not be bound by the terms of this Settlement, and you will be free to sue Defendants on your own for their conduct in connection with the pricing and marketing of Relafen.  However, you will not receive any money from the Settlement, and you will no longer be represented by the lawyers for the Class.  **If you want to receive money from the Settlement, do not file an opt out form.**

**What do I have to do to remain a member of the Class?**  You will automatically be considered part of the Class unless you opt out.  However, to receive any money from the Settlement, you must fill out a Claim Form and send it to the Claims Administrator postmarked no later than _____, 2005. Claim Forms are included with this Notice (there are different forms for Consumers and Third Party Payors).

**How do I Opt Out?**  If you do not want a payment from the settlement but want to keep the right to sue the Defendants over the legal issues in this case, you must take steps to get out of the class.  You can get out of the Class ("opt out") by sending a request to opt out to the Claims Administrator postmarked no later than _____, 2005.  Opt Out Forms are included with this Notice (there are different forms for Consumers and Third Party Payors).

Claim Forms or Opt Out Forms must be sent to the following address:

**Relafen Claims Administrator**
**P.O. Box 24729**
**West Palm Beach, Florida 33416**

**Who are the lawyers for the Class?**  The following counsel have been approved by the Court as Lead Counsel on behalf of the Class:

Thomas M. Sobol
Hagens Berman, LLP
One Main Street, 4th Floor
Cambridge, MA 02142

Eugene A. Spector
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Patrick E. Cafferty
Miller Faucher and Cafferty LLP
101 North Main Street, Suite 450
Ann Arbor, MI 48104

J. Douglas Richards
Milberg Weiss Bershad & Schulman LLP
One Pennsylvania Plaza
New York, NY 10119-0165

Samuel Heins
Heins, Mills & Olson
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

**Can I have my own lawyer?**  Yes, you can be represented by your own lawyer, but you will have to pay all of your own lawyer's fees and expenses.

**If I stay in the Class and accept the Settlement, what claims am I giving up?**  If the Settlement is approved by the Court, then the lawsuit will be dismissed.  You and all members of the Class will be releasing all claims under federal and state law which you may have against Defendants and others concerning Relafen as set forth in the full text of the release included on the last page of this Notice.

## THE FAIRNESS HEARING

**When does the Court rule on the Settlement?**      Pursuant to the Court's Order dated _____, 2004, a Fairness Hearing will be held on _____, 2005 , at _____ .m. at the United States District Court for the District of Massachusetts, One Courthouse Way, Boston, Massachusetts 02210.  The hearing date may be changed without notice, so to ensure you have the most up to date information you may visit the website: www.relafensettlement.com.  The purpose of the Fairness Hearing is to do the following:

(a)  determine whether the Settlement is fair, reasonable and adequate and in the best interests of the Class, whether it should be approved by the Court, and whether judgment should be entered;

(b) determine whether the Class has been fairly and adequately represented by the Plaintiffs and by attorneys for Plaintiffs and the Class;

(c) consider the application for incentive awards for the named plaintiffs in the case in a total amount not to exceed $187,500;

(d)  consider the applications of attorneys for Plaintiffs and the Class for an award of attorneys' fees and reimbursement of litigation expenses; and

(e) consider any other issues the Court thinks necessary.

**Can I object to the Settlement?**      If you are a Class member as defined above, and you have not requested to opt out of the Class, you may object to the fairness, reasonableness or adequacy of the Settlement, the fairness or adequacy of the lawyers' representation, or the applications for attorneys' fees and litigation expenses.

**How do I object?**      To object, you (or your lawyer if you have one) must file a written statement with the Clerk of the Court, United States District Court for the District of Massachusetts, One Courthouse Way, Boston, Massachusetts 02210, on or before _____ 2005.  Your written

statement should include a brief description of your objection and you may also include any other supporting materials, papers or briefs that you want the Court to consider. Whatever you file with the Court must also be mailed to the following:

> Thomas M. Sobol
> Hagens Berman, LLP
> One Main Street, 4th Floor
> Cambridge, MA 02142
>
> Liaison Counsel for End-Payor Plaintiffs
>
>
> Christine C. Levin
> Dechert LLP
> 4000 Bell Atlantic Tower
> 1717 Arch Street
> Philadelphia, PA 19103-2793
>
> Counsel for Defendants

Any objection that is not timely made shall be forever barred.

Any lawyer representing a Class member for the purpose of making objections must also file a Notice of Appearance with the Clerk of the Court no later than _____, 2005, and must also serve copies by mail to counsel listed above.

**Can I participate in the Fairness Hearing?** Anyone can come to the Fairness Hearing and watch. Any Class member who timely files and serves a written objection may also appear at the Fairness Hearing, either in person or through personal counsel hired at the Class member's expense, to object to the fairness, reasonableness or adequacy of the Settlement, the fairness or adequacy of representation, the request of incentive awards to named plaintiffs or the applications for attorneys' fees and litigation expenses. You do not, however, have to be at the hearing to object. If you follow the rules above for filing an objection, the Court will consider your objection whether or not you come to the hearing.

Class members or their lawyers intending to appear at the Fairness Hearing must, no later than _____, 2005, serve on counsel listed above, and file with the Court, a notice of intention to appear, which includes: (i) the name, address and telephone number of the Class member and, if applicable, the name, address and telephone number of the Class member's attorney, (ii) the objection, including any papers in support thereof, and (iii) the name and address of any witnesses to be presented at the Fairness Hearing, together with a statement as to the matters on which they wish to testify and a summary of the proposed testimony.

Any Class member who does not timely file and serve a written objection and a notice of intention to appear by _____, and any witness not identified in the notice of intention to appear, shall not be permitted to object or appear at the Fairness Hearing, except for good cause shown, and shall be deemed to have waived, forfeited, and shall be barred from raising, any objection to the Settlement made at the Fairness Hearing, and shall be bound by all of the terms of the Settlement and by all orders of the Court.

## ATTORNEYS' FEES AND OTHER COSTS

At the Fairness Hearing, counsel for Plaintiffs and the Class will ask the Court to approve an award of attorneys' fees of no more than 33 1/3% of the Settlement Fund and reimbursement of litigation expenses not to exceed $____, including the cost of notice and administration. Plaintiffs' counsel may make a further application to the Court for attorneys' fees and expenses. All awards of attorneys' fees and expenses shall be paid exclusively out of the Settlement Fund.

## FOR FURTHER INFORMATION

This Notice contains only a summary of the Settlement. The complete terms of the Settlement are contained in the Settlement Agreement, which is available to the public to review at the Clerk's office, United States District Court for the District of Massachusetts, One Courthouse Way, Boston, Massachusetts 02210. In addition, the complete Settlement Agreement is posted on the website at www.relafensettlement.com. *Please do not contact the Court, the Clerk's office or the Judge, except as set forth herein.*

Dated:_____, 2004

United States District Court
District of Massachusetts

## TEXT OF RELEASE TO BE GIVEN TO DEFENDANTS BY THE CLASS

Upon the Effective Date of the Stipulation as defined therein, Defendants and their present and former direct and indirect parents, subsidiaries, divisions, partners and affiliates, and their respective present and former stockholders, officers, directors, employees, managers, agents, attorneys and any of their legal representatives (and the predecessors, heirs, executors, administrators, trustees, successors and assigns of each of the foregoing) (the "Releasees") shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that End-Payor Plaintiffs or any member or members of the End-Payor Class who have not timely excluded themselves from the End-Payor Class Actions (as used throughout Paragraph 17 of the Settlement Agreement, references to the "Class" "members of the Class" or "End-Payor Class Members" includes any of their past, present or future officers, directors, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors and assigns, acting in their capacity as such), whether or not they object to the settlement and whether or not they make a claim upon or participate in the Settlement Fund, ever had, now has, or hereafter can, shall or may have, directly, representatively, derivatively or in any other capacity, arising out of any conduct, events or transactions, prior to the date hereof, alleged or which could have been alleged in the End-Payor Class Actions relating to the marketing, sale, manufacture, pricing or purchase of, or the enforcement of intellectual property related to, the drug Relafen or any form of nabumetone (the "Released Claims"). Each member of the Class hereby covenants and agrees that it shall not, hereafter, seek to establish liability against any Releasee based, in whole or in part, on any of the Released Claims.

In addition, each End-Payor Class Member hereby expressly waives and releases, upon the Stipulation becoming effective, any and all provisions, rights and benefits conferred by §1542 of the California Civil Code, which reads:

Section 15.42. <u>General Release; extent</u>. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

or by any law or any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code. Each End-Payor Class Member may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of Paragraph 17 of the Settlement Agreement, but each End-Payor Class Member hereby expressly waives and fully, finally and forever settles and releases, upon this Stipulation becoming effective, any known or unknown,

suspected or unsuspected, contingent or non-contingent Released Claims with respect to the subject matter of the provision of Paragraph 17 of the Settlement Agreement whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each End-Payor Class Member also hereby expressly waives and fully, finally and forever settles and releases any and all Released Claims it may have against Defendants under § 17200, *et seq.*, of the California Business and Professions Code, which claims are expressly incorporated into Paragraph 17 of the Settlement Agreement.

Reservation of Claims.   Notwithstanding the above, the End-Payor Class Members intend by the Stipulation to settle with and release only the Releasees that such Class members have released pursuant to Paragraph 17 of the Settlement Agreement, and the parties do not intend the Stipulation, any part thereof or any other aspect of the proposed settlement or release, to release or otherwise affect in any way any rights an End-Payor Class Member has or may have against any other party or entity whatsoever other than the Releasees with respect to the Released Claims pursuant to Paragraph 17 of the Settlement Agreement. In addition, the releases set forth in Paragraph 17 of the Settlement Agreement shall not release any claims arising in the ordinary course of business between End-Payor Class Members and the Releasees concerning product liability, breach of contract, breach of warranty, or personal injury. Furthermore, the releases set forth in Paragraph 17 of the Settlement Agreement shall not act as release of any claim End-Payor Class Members have or may have as a class member in the putative class action captioned *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, pending in the United States District Court for the District of Massachusetts, or any related claim that End-Payor Class Members have or may have as a Class Member,  opt-out or otherwise apart from such putative class action or any litigation alleging similar claims; provided, however, that in such litigation GSK preserves its right to assert that any recovery by and End-Payer Class Member in such litigation related to the drug Relafen should be set-off by the End-Payer Class Member's pro rata share of the Settlement Fund.  Moreover, the releases set forth in Paragraph 17 of the Settlement Agreement shall only apply to a governmental entity's purchases of Relafen or nabumetone made by the governmental entity as part of a health benefit plan for its employees and the releases in Paragraph 17 of the Settlement Agreement shall not act as a release of any claim the governmental entity may have with respect to any other purchases of Relafen or nabumetone by the governmental entity, including the marketing, sale, manufacture, pricing, or enforcement of intellectual property related to the governmental entity's other purchases of Relafen or nabumetone.

# EXHIBIT 2
## TO [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT

## ATTENTION RELAFEN or NABUMETONE PURCHASERS

**To: All persons or entities who purchased or paid for
RELAFEN or its generic alternative nabumetone
at anytime between September 1, 1998 to June 30, 2003:**

If you are a consumer, you may be entitled to participate in a cash settlement which may provide minimum payments to consumers in some states, subject to the sufficiency of available funds based on the actual claims received. You may be entitled to more than these minimum amounts depending on the amount of your Relafen or nabumetone purchases. If you are a Third Party Payor, such as a health insurance plan or an employee benefit plan, you may be entitled to recover the amount you paid for Relafen or nabumetone purchases made by plan participants.

A settlement has been proposed in a class action lawsuit alleging that the manufacturer of Relafen engaged in conduct which delayed the marketing of less expensive generic versions of Relafen. NO QUESTION IS RAISED ABOUT THE SAFETY OR EFFECTIVENESS OF RELAFEN. Defendants deny that they committed any violation of law or any wrongdoing or that they have any liability with respect to plaintiffs or on behalf of the Class, but have concluded that it is desirable that this action be settled. **You may have important legal rights under this settlement, some of which you must act on by _____, 2005.**

For a Class Action Notice Package will the full details of this settlement, please call:

**1-888-412-7419**

or you may write to:

Relafen Settlement Administrator
P.O. Box 24729
West Palm Beach, FL 33416

or you may visit the website at www.relafensettlement.com

# EXHIBIT 3

## TO [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT

*THIRD PARTY PAYOR PROOF OF CLAIM FORM*

## SECTION A - Type of Claimant

Please indicate whether you are claiming on your own behalf as a Class Member or as the authorized agent of one or more Class Members by placing an "X" in the appropriate space below. Only one space should be marked. **If you wish to make a claim as a Class Member AND ALSO as the authorized agent of other Class Members, please complete one Proof of Claim for your claim as a Class Member and separate Proofs of Claim for those Class Members for whom you are authorized to submit a claim.**

This Proof of Claim is being filed by: (select one)

A.          (___)     The Class Member, itself.

OR

B.          The duly authorized agent of the Class Member identified in Section C of this Proof of Claim, which agent's relationship with the Class Member is best described, as follows:

          (___)     Third Party Administrator (other than a Pharmacy Benefits Manager)
          (___)     Pharmacy Benefits Manager
          (___)     Other.  Explain: _____

          If you marked "A," complete Sections B, D and E of this Proof of Claim, but skip Section C.
          If you marked "B," complete Sections C, D and E of this Proof of Claim, but skip Section B.

## SECTION B - Claim By Class Member

You should complete this Section B if you are making a claim on your own behalf as a Class Member.  If you are making a claim as the authorized agent of a Class Member, you should skip this section and proceed to Section C.

_____
Class Member's Name

_____
Street Address                                                                    Floor/Suite

_____
City                                        State                          Zip Code

(_____)                              (_____)
Area Code - Telephone Number            Area Code - Fax Number

_____
Federal Employer Identification Number

Any other names by which you have been known or other FEINs you have used to pay prescription drug benefits during the period of September 1, 1998 through June 30, 2003:

_____               _____
                                               _____

Check the term below that best describes your company/entity:
      (___)  Health Insurance Company/HMO           (___)  Self-Insured Employer Health Benefit Plan
      (___)  Self-Insured Union Health & Welfare Fund   (___)  Other.  Describe: _____

## SECTION C - Claim by Authorized Agent of Class Member

You should complete this Section C if you are submitting this Proof of Claim as the duly authorized agent of a Class Member.

_____
Authorized Agent's Name

_____

Street Address                                                                                     Floor/Suite

_____

City                                                              State                                      Zip Code

( _____ )                                      ( _____ )
Area Code - Telephone Number                            Area Code - Fax Number

_____

Authorized Agent's Tax Identification Number

**SECTION C - (continued)**

Please list the Federal Employer Identification Number and/or name of the Class Member for whom you have been duly authorized to submit this Proof of Claim. (In the alternative, you may submit the requested list of Class Member names and/or FEINs in an acceptable electronic format. Please contact the Settlement Administrator to determine what formats are acceptable.):

_____ _____ _____

_____

_____

_____

### SECTION D - Information Necessary to Calculate Class Member's Claim

**1. Amounts paid or reimbursed for prescriptions of Relafen and its generic equivalent (nabumetone) filled during the period of September 1, 1998 - June 30, 2003:**

      (A)      **For prescriptions filled in AZ, CA, DC, IL, IA, MA, NE, NV, SD, TN, VT, WV, WI:**   $_____

      (B)      **For prescriptions filled in FL, ME, MI, MN, NC, ND:**   $_____

      (C)      **For prescriptions filled in New York:**   $_____

      (D)      **For prescriptions filled in Hawaii:**   $_____

      (E)      **For prescriptions filled in New Mexico:**   $_____

**2. Amounts paid or reimbursed for prescriptions of branded Relafen only (and not including purchases or reimbursements for generic equivalent formulations (nabumetone)), filled during the period of September 1, 1998 - June 30, 2003:**

      (F)      **For prescriptions filled in U.S. territories and AK, AL, AR, CO, CT, DE, GA, ID, IN, KS, KY, LA, MD, MS, MT, MO, NH, NJ, OH, OR, OK, PA, RI, SC, TX, UT, VA, WA, WY:**   $_____

For mail order purchases, the state of residence of the patient is deemed to be the state in which the purchase occurre

*Claimant certifies that the figures are true and accurate and are based upon actual records maintained by or otherwise available to the Claimant.*

## SECTION E - Jurisdiction of the Court and Certification

By signing below, I hereby swear and affirm that: (I) I have authority to submit this Proof of Claim either directly on behalf of the Class Member or as its Authorized Agent, and, in turn, have been given the authority to submit this Proof of Claim by each Class Member identified in this Proof of Claim and in any attachments to this Proof of Claim, and to receive on behalf of each such Class Member any and all amounts that may be allocated from the Third Party Payor Settlement Fund to such Class Member; (2) the information contained in this Proof of Claim and any attachments hereto is true and accurate, based on records maintained by or otherwise available to me; (3) I, the Authorized Agent (if any), and the Class Member on whose behalf this Proof of Claim is submitted, hereby submit to the jurisdiction of the United States District Court for the District of Massachusetts (the "Court") for all purposes associated with this Proof of Claim, including resolution of disputes relating to this Proof of Claim; (4) in the event that amounts from the Third Party Payor Settlement Fund are distributed to the Authorized Agent of a Class Member, and the Class Member later claims that the Authorized Agent did not have the authority to claim and receive such amounts on its behalf, the Authorized Agent, I and/or my employer will hold the Class, counsel for the Class, Defendants and the Settlement Administrator harmless with respect to any claims made by said Class Member. I acknowledge that any false information or representations contained herein may subject the Authorized Agent and me to sanctions, including the possibility of criminal prosecution. I hereby agree, on behalf of myself and the Authorized Agent, to supplement this Proof of Claim by furnishing documentary backup for the information provided herein, upon request of the Settlement Administrator.

Name:_____

Position:_____

                 [Print or type]

Date:_____

The following information is to be provided by the Individual that signs and certifies this Proof of Claim:

I am filing this Proof of Claim as the authorized employee of the following Class Member or Authorized Agent for Class Member:

I. Name of Individual's
Employer:_____

2. Business
Address:_____

_____

    City                            State                      Zip Code

3.
(_____)_____(_____)_____

    Area Code - Telephone Number            Area Code - Fax Number

4.
_____

    E-mail Address

# EXHIBIT 4

## TO [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT

## THIRD PARTY PAYOR CLAIM FORM INSTRUCTIONS

**IMPORTANT NOTICE**:  IN ORDER FOR THE THIRD PARTY PAYOR CLASS MEMBER TO RECEIVE ITS SHARE OF THE THIRD PARTY PAYOR SETTLEMENT FUND, PURSUANT TO THE ALLOCATION AND DISTRIBUTION PLAN DESCRIBED IN THE NOTICE AND THE SETTLEMENT AGREEMENT, A COMPLETED, SIGNED, AND CERTIFIED PROOF OF CLAIM MUST BE SENT TO THE SETTLEMENT ADMINISTRATOR, AT THE ADDRESS LISTED BELOW:

Relafen Settlement Administrator
P.O. Box 24729
West Palm Beach, FL 33416
(888) 412-7419

**IF YOUR COMPLETED, SIGNED CLAIM FORM IS NOT MAILED BY FIRST-CLASS MAIL, POSTAGE PREPAID, AND POST-MARKED BY _____, 2005 YOU WILL NOT BE ALLOWED TO PARTICIPATE IN THE SETTLEMENT DISTRIBUTION.**

THE COMPLETED CLAIM FORM AND THE INFORMATION CONTAINED HEREIN WILL BE TREATED AS CONFIDENTIAL BY ORDER OF THE COURT IN ACCORDANCE WITH THE SETTLEMENT AGREEMENT AND WILL BE USED SOLELY FOR PURPOSES OF ADMINISTERING THIS SETTLEMENT.

Class Members are "Third Party Payors" which means a third party which was at risk, by contract, to pay all or part of the purchase price for Relafen and/or generic nabumetone prescriptions filled in the United States for individual beneficiaries of the TPP's drug coverage.

This Proof of Claim may be completed, signed and certified by the Class Member itself, or by its duly authorized agent.  IF A CLASS MEMBER SUBMITS A PROOF OF CLAIM ON ITS OWN BEHALF, NO OTHER PROOF OF CLAIM WILL BE PERMITTED ON BEHALF OF THAT CLASS MEMBER. IN THE EVENT THAT PROOFS OF CLAIM ARE FILED BY BOTH A CLASS MEMBER AND ANOTHER ENTITY THAT PURPORTS TO BE THE AUTHORIZED AGENT OF THAT CLASS MEMBER, ONLY THE CLASS MEMBER'S PROOF OF CLAIM WILL BE CONSIDERED BY THE SETTLEMENT ADMINISTRATOR.  **THE SETTLEMENT ADMINISTRATOR IS AUTHORIZED TO REQUEST FROM PERSONS OR ENTITIES SUBMITTING PROOFS OF CLAIM, ANY DOCUMENTATION NECESSARY TO VERIFY ALL INFORMATION APPEARING IN THE PROOF OF CLAIM OR TO PREVE[NT] CONSIDERATION OF DUPLICATE CLAIMS SUBMITTED BY OR ON BEHALF OF A CLASS MEMBER. FAILURE TO PROVI[DE] SUCH INFORMATION IN RESPONSE TO SUCH REQUEST MAY CONSTITUTE GROUNDS FOR REJECTION OF THE PROO[F] OF CLAIM.**

If a Class Member has authorized you to submit a Proof of Claim on its behalf, you must provide the information requested in Section C in addition to the other information requested by this Proof of Claim. You may submit a separate Proof of Claim for each Class Member that has duly authorized you to do so, OR you may submit one aggregate Proof of Claim for all such Class Members that have authorized you to do so.  If you are submitting Proofs of Claim both on your own behalf as a Class Member AND on behalf of one or more Class Member that has authorized you to submit a Proof of Claim, you should submit one Proof of Claim for yourself and another Proof of Claim for the other Class Member(s).  **Do not submit a Proof of Claim on behalf of any Class Member without specific prior authorization from that Class Member.**

If after reviewing this Proof of Claim you need additional assistance, you may contact the Settlement Administrator, at the toll-free number listed above.

Instruction Page

*- USE THIS FORM IF YOU ARE INTENDING TO EXCLUDE YOURSELF FROM THE CLASS -*

## THIRD PARTY PAYOR NOTICE OF EXCLUSION

Any member of the Settlement Class defined in the accompanying Notice of Pendency and Proposed Settlement of Class Action, Motion for Attorneys' Fees and Settlement Hearing that elects to be excluded from the Settlement Class may do so by completing this form and returning it *postmarked no later than* _____, 2005 to:

**Relafen Settlement Administrator**
**P.O. Box 24729**
**West Palm Beach, FL 33416**

**A SEPARATE NOTICE OF EXCLUSION MUST BE FILED BY EACH CLASS MEMBER ELECTING TO BE EXCLUDED FROM THE SETTLEMENT CLASS**. Third Party Administrators must file a separate Notice of Exclusion for each of their benefit plans who wish to be excluded from the Settlement. If a Notice of Exclusion is filed on behalf of a Class Member by anyone other than (1) a duly authorized officer, director or employee of a corporate Class Member, or (2) a general partner or duly authorized employee of a partnership Class Member, the Notice of Exclusion <u>must be accompanied by written evidence</u>, in addition to the Certification below, of such person's authority to request exclusion on behalf of that Class Member.

In order to elect to be excluded from the Settlement Class, you must provide the following information and complete the Certification:

1.  Name of Class Member[1]:

    _____

2.  C l a s s    M e m b e r ' s    A d d r e s s :

    _____

    _____

    _____

3.  C l a s s   M e m b e r ' s   T a x   I d e n t i f i c a t i o n   N u m b e r   ("FEIN")[2]:

    _____

### Certification

**The undersigned individual represents that he/she has the authority to sign and submit this Notice of Exclusion on behalf of the above-named Class Member. If the undersigned individual is not a duly authorized officer, director or employee of the above-named Class Member (if a corporation), or a general partner or duly authorized employee of the above-named Class Member (if a partnership), he/she must attach written evidence of the Class Member's specific grant of authority to him/her to execute this Notice of Exclusion on its behalf.**

**The undersigned also certifies that he/she has not received any advice from the parties to this litigation concerning his/her or the Class Member's fiduciary obligations under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1100, *et seq.*, or other laws governing their obligations to any Class Member. The undersigned understands that by submitting this Notice of Exclusion, the Class Member identified above will not be entitled to receive any proceeds of the Third Party Payor Settlement Fund. By affixing my signature below, I certify under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746**

Name: _____   Legal Relationship to Class Member: _____

Contact/Telephone Number: _____

Signature: _____   Executed   on:

_____

**[PLEASE COMPLETE FORM ON BACK]**

_____

[1] Please include <u>all</u> names by which Class Member has been known during the period of September 1, 1998 through June 30, 2003.

[2] Please include all FEINs assigned to Class Member during the period of September 1, 1998 through June 30, 2003.

**Each Class Member electing exclusion from the Settlement Class is to provide the following information**:

**THE INFORMATION PROVIDED BELOW WILL BE TREATED AS CONFIDENTIAL BY ORDER**
**OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**
**AND WILL BE USED SOLELY FOR PURPOSES OF ADMINISTERING THIS SETTLEMENT.**

1.   **Amounts paid or reimbursed for prescriptions of Relafen and its generic equivalent (nabumetone) filled during the period of September 1, 1998 - June 30, 2003:**

    (A)   **For prescriptions filled in AZ, CA, DC, IL, IA, MA, NE, NV, SD, TN, VT, WV, WI:**    $_____

    (B)   **For prescriptions filled in FL, ME, MI, MN, NC, ND:**    $_____

    (C)   **For prescriptions filled in New York:**    $_____

    (D)   **For prescriptions filled in Hawaii:**    $_____

    (E)   **For prescriptions filled in New Mexico:**    $_____

2.   **Amounts paid or reimbursed for prescriptions of branded Relafen only (and not including purchases or reimbursements for generic equivalent formulations (nabumetone)), filled during the period of September 1, 1998 - June 30, 2003:**

    (F)   **For prescriptions filled in U.S. territories and AK, AL, AR, CO, CT, DE, GA, ID, IN, KS, KY, LA, MD, MS, MT, MO, NH, NJ, OH, OR, OK, PA, RI, SC, TX, UT, VA, WA, WY:**    $_____

For mail order purchases, the state of residence of the patient is deemed to be the state in which the purchase occurred.

*Claimant certifies that the figures are true and accurate and are based upon actual records maintained by or otherwise available to the Claimant.*

**Please provide information verifying these amounts to the Settlement Administrator with your Notice of Exclusion.**

DRAFT 11/12/04

# EXHIBIT 5
## TO [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT

# CONSUMER CLAIM REGISTRATION
### ~or~
# OPT-OUT FORM

If you are a member of the Settlement Class, you may: (i) register a claim for a share of the Settlement Fund; **or** (ii) opt out of the Class Settlement, and thereby be ineligible to share in the Settlement Fund, but retain any claims you may have against Defendants.  In order to make either of these choices, you must complete this form and mail it to the Relafen Settlement Administrator at the address provided below.

**To complete this form:**

1.  Fill out *Section 1*.

2.  Answer the questions in *Section 2* to determine your eligibility.  To be eligible, you must have either paid all or a portion of the price of Relafen® or its generic equivalent (nabumetone) and you were not fully reimbursed by a third party (such as an insurer), or you had insurance that required a variable co-pay that was based on whether you purchased a brand name or generic drug.

3.  If you want to be **included** in the Settlement Class and register a claim, fill out *Section 3* and mail this form which must be postmarked by _____, **2005.**  You must attach proof of a filled prescription for Relafen® or its generic equivalent (nabumetone), such as a  copy of your prescription label.

4.  If you want to be **excluded** from the Settlement and give up the right to get money from the Settlement Fund, fill out *Section 4* and mail this form which must be postmarked by _____, **2005.**

5.  Someone other than the purchaser of Relafen® or its generic equivalent (nabumetone) can fill out this form on behalf of the purchaser.  In that case, the person filling out the form should complete *Section 5*.

6.  You must sign and date in *Section 6*.

7.  Mail completed and signed form to:

Relafen Settlement Administrator
P.O. Box 24729
West Palm Beach, FL 33416
(888) 412-7419

## Section 1 –        *Everyone must complete this section. (Please type or print.)*

1.      Relafen® or Nabumetone Purchaser Name:

_____

(Use name in which prescriptions were written)

2.      Address: _____

                    *Street Address*

_____   _____  _____

  *City*                               *State*       *Zip Code*

3.      Date of Birth _____/_____/_____

4.      Last four digits of social security number:_____

5.      Telephone Number (_____)_____

## Section 2 –        *Eligibility — Everyone must complete this section.  (Please answer all questions.)*

1.      Did you pay the entire prescription cost or a percentage of the prescription cost for Relafen®
or its generic equivalent (nabumetone) at any time from September 1, 1998 through June 30,
2003?  (For example: The entire prescription cost was $80.  You paid $80 and were not
reimbursed by a third party such as an insurance company or an employee benefit fund.)
        ☐ Yes  ☐ No

2.      Did you pay, at any time from September 1, 1998 through June 30, 2003, a co-pay for the
prescription cost of Relafen® that would have been lower if a generic version of Relafen® had
been available?  (For example: Your insurance company had a provision that required a $20
co-pay for brand name drugs and a $10 co-pay for generic drugs.)

        ☐ Yes  ☐ No

3.      Did you pay either the entire prescription cost or a percentage of the prescription cost up to an
annual dollar amount before a third party, such as an insurance company, began paying

prescription costs for your purchases of Relafen® or its generic equivalent (nabumetone) at any time from September 1, 1998 though June 30, 2003?  (For example: You paid the full price for your prescriptions up to an annual dollar amount.  After your annual dollar amount was reached, a third party, such as an insurance company, paid the full price each time you filled the prescription for the rest of the year.)

☐ Yes   ☐ No

4.     Did you pay either the entire prescription cost or a percentage of the prescription cost of Relafen® or its generic equivalent (nabumetone) at any time from September 1, 1998 through June 30, 2003 after an insurance company had paid up to its annual dollar amount for the year? (For example, a third party, such as an insurance company, paid the full price for your prescriptions up to an annual dollar amount.  After the annual dollar amount was reached, you were required to pay the full price each time you filled the prescription for the rest of the year.)

☐ Yes   ☐ No

If you answered "no" to *all* of the above questions, you are *not eligible* to receive any payment from the Settlement and should not send in this form (see Section ___ of the accompanying Notice).  **If you answered "yes" to any of the above questions, you must complete the appropriate sections below and return this form to the Claims Administrator postmarked on or before _____, 2005.**

---

## Section 3 –        *Only complete this section if you want to take part in the Settlement. (Please type or print.)*

1.     State the dates between September 1, 1998 and June 30, 2003 when you purchased Relafen® and/or its generic equivalent (nabumetone).

_____/\_\_\_\_\_/_____           _____/\_\_\_\_\_/_____
*From*                          *To*

2.     Did you attach proof of a purchase of Relafen® or its generic equivalent (nabumetone)? (If you are unable to attach proof of your prescription purchases, please call the Relafen® Claims administrator at (888) 412-7419 for assistance.)  Only one proof of purchase is required.

☐ Yes   ☐ No

3.     *(Provide the information requested below if you purchased Relafen® and/or its generic equivalent (nabumetone) during the dates specified in your response to Question 1 in the District of Columbia or any of the following states: Arizona, California, Florida, Hawaii, Illinois, Iowa, Massachusetts, Maine, Michigan, Minnesota, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont,*

*West Virginia or Wisconsin.  If you made no purchases in any of these states please leave blank and proceed directly to Question 4 below*.)

What was the **total amount** you paid for your purchases of Relafen® and/or its generic equivalent (nabumetone) while living in *each state* during the entire period of September 1, 1998 through June 30, 2003?  List your total out-of pocket expense for each state, that is, you must deduct any reimbursements that you received from prescription drug benefit plans or other insurance.  If all of your purchasess were in a single state, use line (a) only.  If your transactions were the result of you residing in multiple states, use lines (a) through (c) as needed and attach an additional sheet, if necessary.

    (a)     State of Residence: _____     Amount: $_____

    (b)     State of Residence: _____     Amount: $_____

    (c)     State of Residence: _____     Amount: $_____

4.     *(Provide the information requested below if you purchased branded Relafen® during the dates specified in your response to Question 1 in territories of the United States or any of the following states: Alabama, Alaska, Arkansas, Colorado, Connecticut, Delaware, Georgia, Idaho, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Montana, Missouri, New Hampshire, New Jersey, Ohio, Oregon, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Texas, Utah, Virginia, Washington or Wyoming.  If you made no purchases in any of these states please leave blank*.)

What was the **total amount** you paid for your purchases of branded Relafen® (***do not*** include your purchases of generic equivalents of Relafen (nabumetone)) while living in *each state* during the entire period of September 1, 1998 through June 30, 2003?  List your total out-of pocket expense for each state, that is, you must deduct any reimbursements that you received from prescription drug benefit plans or other insurance.  If all of your purchases were in a single state, use line (a) only.  If your transactions were the result of you residing in multiple states, use lines (a) through (c) as needed and attach an additional sheet, if necessary.

    (a)     State of Residence: _____     Amount: $_____

    (b)     State of Residence: _____     Amount: $_____

    (c)     State of Residence: _____     Amount: $_____

---

**Section 4 –**     ***Only complete this section if you want to opt out and exclude yourself from the Settlement Class and thereby be***

*INELIGIBLE to receive benefits from the Settlement.*

1.      I choose to opt out and be excluded from the Settlement Class.

☐ Yes

2.      I understand that by excluding myself, I become ineligible to receive money from the Settlement Fund.

☐ Yes

_____

## Section 5 –      *Only complete if you are filing this form on someone else's behalf. (Please type or print.)*

1.      Your name: _____

2.      Your relationship to the purchaser of Relafen® or its generic equivalent (nabumetone):

        _____

        Note: If you are submitting this claim on behalf of a deceased claimant, we may contact you for documentation that shows you can act on behalf of that person.

3.      Is the purchaser of Relafen® or its generic equivalent (nabumetone) deceased?

☐ Yes   ☐ No

_____

## Section 6 –      *Everyone must complete this signature and certification section.*

I declare, under penalty of perjury, that all the information provided in this form is true, correct and complete and that the documentation submitted in support of this claim is true, correct and complete.  I understand that filing a false claim constitutes a federal criminal offense under 18 U.S.C. § 1621 and § 1623.

_____      ____/____/____
            SIGNATURE                                    DATE
(Note: You must sign and date for your submission to be valid.)

*If you have question about how to fill out any of the blanks in this form, please call the Settlement Administrator at 1-888-412-7419*

# EXHIBIT B
## TO FOURTH AMENDED STIPULATION AND AGREEMENT OF SETTLEMENT

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE RELAFEN ANTITRUST LITIGATION | ) ) ) | Master File No. 01-CV-12239-WGY |
| | ) | |
| THIS DOCUMENT RELATES TO END-PAYOR ACTIONS: | ) ) ) ) | |
| *Lynch v. SmithKline Beecham Corp.* | ) ) | No. 02-CV-10163-WGY |
| *A.F. of L. - AGC Building Trades Welfare Plan v. SmithKline Beecham Corp.* | ) ) ) | No. 02-CV-10205-WGY |
| *Twin Cities Bakery Workers Health and Welfare Fund v. SmithKline Beecham Corp.* | ) ) ) ) | No. 02-CV-985 (E.D. Pa.) |
| *Houchins v. SmithKline Beecham Corp.* | ) ) | No. 02-CV-10424-WGY |
| *Teamsters Local No. 35 Health Plans v. SmithKline Beecham Corp.* | ) ) ) | No. 02-CV-10487-WGY |
| *Smithfield Foods, Inc. v.  SmithKline Beecham Corp.* | ) ) ) | No.  02-CV-10589-WGY |
| *Franklin v. SmithKline Beecham Corp.* | ) ) | No. 02-CV-10671-WGY |
| *Fox v. SmithKline Beecham Corp.* | ) ) | No. 02-CV-11543-WGY |
| *Kravitz v. SmithKline Beecham Corp.* | ) | No.  02-CV-11806-WGY |

## [PROPOSED] FINAL ORDER AND JUDGMENT GRANTING FINAL APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT

This Court having considered: (a) the Stipulation and Agreement of Settlement dated May __,

2004, including all Exhibits thereto (the "Stipulation") between the End-Payor Plaintiffs and defendants

GlaxoSmithKline PLC, SmithKline Beecham Corporation, d/b/a GlaxoSmithKline, Beecham Group

PLC and SmithKline Beecham, PLC (collectively "GSK" and/or "Defendants"); (b) the proposed

allocation and distribution of the Settlement Fund; and (c) End-Payor Counsel's application for

attorneys' fees, reimbursement of litigation expenses and incentive awards for the End-Payor Plaintiffs;

and having held a hearing on _____, 2004; having considered all of the submissions and

arguments with respect thereto, and otherwise being fully informed and good cause appearing therefore,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that:

1.      This Final Order and Judgment incorporates herein and makes a part hereof, the

Stipulation, including the Exhibits thereto.  Unless otherwise provided herein, the terms defined in the

Stipulation shall have the same meanings for purposes of this Final Order and Judgment.

2.      The Court has personal jurisdiction over all End-Payor Plaintiffs, End-Payor Class

Members and Defendants, and has subject matter jurisdiction to approve the Stipulation.

3.      Based on the record before the Court, including the submissions in support of the

Settlement, objections and responses thereto, as well as the Stipulation, the Court hereby certifies, for

settlement purposes, the following class:

> All persons or entities in the United States who purchased Relafen and/or its generic
> alternatives (known as nabumetone) during the period of September 1, 1998 through
> June 30, 2003 for consumption by themselves, their families, members, employees,
> insureds, participants, or beneficiaries.  Excluded from the class are governmental
> entities (provided, however, a governmental entity is included only to the extent it
> makes prescription drug purchases as part of a health benefit plan for its employees);
> Defendants and their officers, directors, management, employees, subsidiaries, and
> affiliates; persons or entities who purchased Relafen or its generic alternatives for
> purposes of resale; any person or entity whose only purchase(s) of Relafen were made
> directly from Defendants or its affiliates and/or whose only purchases of generic
> nabumetone were made directly from the manufacturer thereof; and persons or entities
> who suffered no economic harm as a result of Defendants' alleged conduct (the "End-
> Payor Class").

In so holding, the Court finds that the prerequisites of Rule 23(a) and (b)(3) have been satisfied for certification of the End-Payor Class for settlement purposes: the End-Payor Class, numbering in the millions, is so numerous that joinder of all members is impracticable; there are a number of questions of law and fact common to the End-Payor Class, such as whether Defendants violated the law by, among other things, obtaining and attempting to enforce U.S. Patent No. 4,420,639 against pharmaceutical manufacturers who sought to introduce generic versions of Relafen; the claims and defenses of the End-Payor Plaintiffs are typical of the claims and defenses of the End-Payor Class; the End-Payor Plaintiffs have fairly and adequately protected the interests of the End-Payor Class in the settlement of the End-Payor Class Actions; questions of law and fact predominate over questions affecting only individual End-Payor Class Members, rendering the End-Payor Class sufficiently cohesive to warrant adjudication by representation; and the settlement class is superior to individual litigation as a method for the fair and efficient adjudication of the End-Payor Class Actions.

In making all of the foregoing findings, the Court has exercised its discretion in certifying a settlement class. Defendants have preserved all of their defenses and objections against and rights to oppose certification of a litigation class if the Settlement does not become Final in accordance with the Stipulation.

4.      The record shows that Notice has been given to the End-Payor Class in the manner approved by the Court in its Order of May __, 2004 [Docket No. ____]. The Court finds that such Notice: (i) constitutes reasonable and the best practicable notice; (ii) constitutes notice that is reasonably calculated, under the circumstances, to apprise End-Payor Class Members of the pendency of the End-Payor Class Actions, the terms of the Settlement, End-Payor Class Members' right to

object to or exclude themselves from the Settlement and to appear at the settlement fairness hearing ("Fairness Hearing"); (iii) constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meets the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure.

5.      No individuals or entities, other than those listed on Exhibit A hereto, have excluded themselves from the End-Payor Class.  This Order shall have no force or effect on the persons or entities listed on Exhibit A hereto.

6.      The Court finds that extensive arm's-length negotiations have taken place in good faith between End-Payor Lead Counsel and counsel for the Defendants, resulting in the Stipulation.

7.      Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court hereby finally approves in all respects the Settlement set forth in the Stipulation ("the Settlement") and finds that the Settlement, the Stipulation, and the Plan of Allocation, are, in all respects, fair reasonable and adequate, and in the best interest of the End-Payor Class.  The Court further approves the establishment of the Settlement Fund under the terms and conditions set forth in the Stipulation and the Escrow Agreement. The parties are hereby directed to implement and consummate the Settlement according to its terms and provisions of the Stipulation.  In addition, the parties are authorized to agree to and adopt such amendments and modifications to the Stipulation as (i) shall be consistent in all material respects with this Final Order and Judgment, and (ii) do not limit the rights of End-Payor Class Members.

8.      The End-Payor Class Actions are hereby dismissed with prejudice and without costs to any party, except as otherwise provided herein.

9.      Upon the Effective Date of the Stipulation as defined therein, Defendants and their

-4-

present and former direct and indirect parents, subsidiaries, divisions, partners and affiliates, and their respective present and former stockholders, officers, directors, employees, managers, agents, attorneys and any of their legal representatives (and the predecessors, heirs, executors, administrators, trustees, successors and assigns of each of the foregoing) (the "Releasees") shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that End-Payor Plaintiffs or any member or members of the End-Payor Class who have not timely excluded themselves from the End-Payor Class Actions (as used throughout this paragraph, references to the "Class" "members of the Class" or "End-Payor Class Members" includes any of their past, present or future officers, directors, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors and assigns, acting in their capacity as such), whether or not they object to the settlement and whether or not they make a claim upon or participate in the Settlement Fund, ever had, now has, or hereafter can, shall or may have, directly, representatively, derivatively or in any other capacity, arising out of any conduct, events or transactions, prior to the date hereof, alleged or which could have been alleged in the End-Payor Class Actions relating to the marketing, sale, manufacture, pricing or purchase of, or the enforcement of intellectual property related to, the drug Relafen or any form of nabumetone (the "Released Claims").  Each member of the Class hereby covenants and agrees that it shall not, hereafter, seek to establish liability against any Releasee based, in whole or in part, on any of the Released Claims.

In addition, each End-Payor Class Member hereby expressly waives and releases, upon the Stipulation becoming effective, any and all provisions, rights and benefits conferred by §1542 of the California Civil Code, which reads:

> Section 15.42.  <u>General Release; extent</u>.  A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

or by any law or any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code.  Each End-Payor Class Member may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this paragraph, but each End-Payor Class Member hereby expressly waives and fully, finally and forever settles and releases, upon this Stipulation  becoming effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claims with respect to the subject matter of the provision of this paragraph whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each End-Payor Class Member also hereby expressly waives and fully, finally and forever settles and releases any and all Released Claims it may have against Defendants under § 17200, *et seq.*, of the California Business and Professions Code, which claims are expressly incorporated into this paragraph.

10.    <u>Reservation of Claims</u>.   Notwithstanding the above, the End-Payor Class Members intend to settle release only the Releasees that such Class members have released pursuant to

paragraph 9 of this Order, and the parties do not intend the Stipulation, any part thereof or any other aspect of the proposed settlement or release, to release or otherwise affect in any way any rights an End-Payor Class Member has or may have against any other party or entity whatsoever other than the Releasees with respect to the Released Claims.  In addition, the releases set forth in  Paragraph 9 of this Order shall not release any claims arising in the ordinary course of business between End-Payor Class Members and the Releasees concerning product liability, breach of contract, breach of warranty, or personal injury.  Furthermore, the releases set forth in Paragraph 9 of this Order shall not act as release of any claim End-Payor Class Members have or may have as a class member in the putative class action captioned *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, pending in the United States District Court for the District of Massachusetts, or any related claim that End-Payor Class Members have or may have as a Class Member, opt-out or otherwise apart from such putative class action or any litigation alleging similar claims; provided, however, that in such litigation GSK preserves its right to assert that any recovery by and End-Payer Class Member in such litigation related to the drug Relafen should be set-off by the End-Payer Class Member's pro rata share of the Settlement Fund.  Moreover, the releases set forth in Paragraph 9 of this Order shall only apply to a governmental entity's purchases of Relafen or nabumetone made by the governmental entity as part of a health benefit plan for its employees and the releases in Paragraph 9 of this Order shall not act as a release of any claim the governmental entity may have with respect to any other purchases of Relafen or nabumetone by the governmental entity, including the marketing, sale, manufacture, pricing, or enforcement of intellectual property related to the governmental entity's other purchases of Relafen or

-7-

nabumetone.

11.     The Court finds that the Settlement Fund is a "qualified settlement fund" as defined in section 1.468B-1(c) of the Treasury Regulations in that it satisfies each of the following requirements:

(a)     The Settlement Fund is established pursuant to an order of this Court and is subject to the continuing jurisdiction of this Court;

(b)     The Settlement Fund is established to resolve or satisfy one or more claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liabilities; and

(c)     The assets of the Settlement Fund are segregated from other assets of GSK, the transferor of payments to the Settlement Fund.

12.     Under the "relation-back" rule provided under section 1.468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that:

(a)     The Settlement Fund met the requirements of paragraphs 11(b) and 11(c) of this Order prior to the date of this Order approving the establishment of the Settlement Fund subject to the continued jurisdiction of this Court; and

(b)     GSK and the Claims Administrator may jointly elect to treat the Settlement Fund as coming into existence as a "qualified settlement fund" on the later of the date the Settlement Fund met the requirements of paragraphs 11(b) and 11(c) of this Order or January 1 of the calendar

-8-

year in which all of the requirements of paragraph 11 of this Order are met. If such relation-back election is made, the assets held by the Settlement Fund on such date shall be treated as having been transferred to the Settlement Fund on that date.

13.     Nothing in this Final Order and Judgment, the Settlement, or the Stipulation, is or shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Defendants.

14.     End-Payor Counsel have moved pursuant to Rules 23(h), 54(d) and 52(a) of the Federal Rules of Civil Procedure for an award of attorneys' fees and reimbursement of expenses. Pursuant to Rule 23(h)(3) and 52(a) this Court makes the following findings of fact and conclusions of law:

(a)     that the Settlement confers a substantial benefit on the End-Payor Class;

(b)     that the value conferred on the End-Payor Class is immediate and readily quantifiable, upon this Judgment becoming final, each End-Payor Class Member will receive a cash payment that represents a significant portion of the alleged financial harm incurred as a result of Defendants' conduct;

(c)     that End-Payor Counsel vigorously and effectively pursued the End-Payor Class Members' claims before this Court in this highly complex case;

(d)     that the Settlement was obtained as a direct result of End-Payor Counsel's skillful advocacy;

(e)     that the Settlement was reached following a mediation presided over by the Honorable A. David Mazzone, and was negotiated in good-faith and in the absence of collusion;

(f)     that during the prosecution of the End-Payor Class Actions, End-Payor Counsel incurred expenses in the amount of $_____ which included costs for expert witnesses and other expenses which the Court  finds to be reasonable and necessary to the representation of the End-Payor Class;

(g)     that End-Payor Class Members were advised in the "Notice of Pendency and Proposed Settlement of Class Action, Motion for Attorneys' Fees and Settlement Hearing" approved by the Court that End-Payor Counsel intended to apply for an award of attorneys' fees in an amount up to 33 1/3 % of the Settlement Fund (plus interest thereon), plus reimbursement of reasonable costs and expenses incurred in the prosecution of this action.

(h)     that _____ member(s) of the End-Payor Class has (have) submitted written objection(s) to the award of attorneys' fees and expenses;

(i)     that counsel who recover a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Blum v. Stenson*, 465 U.S. 866, 900 n.16 (1984).

(j)      that use of the percentage of the fund method in common fund cases is the

"prevailing praxis" in this Circuit for awarding attorneys' fees and permits the Court to focus on a

showing that the fund conferring the benefit on the class resulted from the lawyers' efforts.  *In re*

*Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Litig.*, 56 F.3d 295 (1st

Cir. 1995); and

(k)      the requested 33 1/3 % fee award is well withing the applicable range of

percentage awards; *In re Relafen Antitrust Litig.* [Direct Purchaser Class Action], No. 01-12239

(D. Mass. April 9, 2004) [Doc. No. 297]; *Mowbray v. Waste Management Holdings*, No. 98-

11534-WGY (D. Mass. Aug. 2, 2001); *In re Copley Pharmaceutical, Inc. Sec. Litig.*, No. 94-

11897-WGY (D. Mass. Feb. 8, 1996); *Wilensky v. Digital Equipment Corp.*, No. 94-10752-JLT

(D. Mass. July 11, 2001).

Accordingly, End-Payor Counsel are hereby awarded $_____ from the

balance of the Settlement Fund,  as their fee award which the Court finds to be fair and reasonable,

and which amount shall be paid to End-Payor Counsel from the Settlement Fund in accordance with

the terms of the Stipulation, with interest from May ____, 2004 (the date of the funding of the

Settlement Fund) to the date of payment, at the same net interest rate earned by the Settlement Fund.

Further, End-Payor Counsel are hereby awarded $_____ for their expenses which the

Court finds to be fair and reasonable, and which amount shall be paid to End-Payor Counsel from

Settlement Fund in accordance with the terms of the Stipulation.  The award of attorneys' fees and

expenses shall be allocated among End-Payor Counsel by End-Payor Lead Counsel.

-11-

15.     Without affecting the finality of this Final Order and Judgment, the Court retains

continuing and exclusive jurisdiction over all matters relating to administration, consummation,

enforcement and interpretation of the Stipulation and of this Final Order and Judgment, to protect and

effectuate this Final Order and Judgment, and for any other necessary purpose.  Defendants, End-

Payor Plaintiffs and each member of the End-Payor Class are hereby deemed to have irrevocably

submitted to the exclusive jurisdiction of this Court, for any suit, action, proceeding or dispute arising

out of or relating to the Stipulation or the applicability of the Stipulation, including the Exhibits thereto.

Without limiting the generality of the foregoing, and without affecting the finality of this Final Order and

Judgment, the Court retains exclusive jurisdiction over any such suit, action or proceeding.  Solely for

purposes of such suit, action or proceeding, to the fullest extent they may effectively do so under

applicable law, the parties hereto are deemed to have irrevocably waived and agreed not to assert, by

way of motion, as a defense or otherwise, any claim or objection that they are not subject to the

jurisdiction of this Court, or that this Court is, in any way, an improper venue or an inconvenient forum.

16.     End-Payor Plaintiffs listed in _____ are hereby granted an incentive

award for representing the End-Payor Class in the aggregate amount of $_____, to be

divided among them by End-Payor Lead Counsel, which amount is in addition to whatever monies

End-Payor Plaintiffs will receive from the Settlement Fund pursuant to the Plan of Allocation.

17.     In the event that the Settlement does not become effective according to Stipulation, this

Order and Final Judgment shall be rendered null and void as provided by the Stipulation, shall be

vacated and, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation.

DATED:   _____        _____

                                                    Hon. William G. Young

                                                    Chief Judge

**EXHIBIT A**

INDIVIDUALS AND ENTITIES THAT HAVE PROPERLY EXCLUDED

THEMSELVES FROM THE END-PAYOR CLASS IN ACCORDANCE

WITH THE ORDER OF _____, 2004 (Docket No. ____).

**[list all]**

# EXHIBIT C
## TO FOURTH AMENDED STIPULATION AND AGREEMENT OF SETTLEMENT

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE RELAFEN ANTITRUST LITIGATION | ) ) ) ) | Master File No. 01-CV-12239-WGY |
| THIS DOCUMENT RELATES TO END-PAYOR ACTIONS: | ) ) ) ) | |
| *Lynch v. SmithKline Beecham Corp.* | ) ) | No. 02-CV-10163-WGY |
| *A.F. of L. - AGC Building Trades Welfare Plan v. SmithKline Beecham Corp.* | ) ) ) | No. 02-CV-10205-WGY |
| *Twin Cities Bakery Workers Health and Welfare Fund v. SmithKline Beecham Corp.* | ) ) ) ) | No. 02-CV-985 (E.D. Pa.) |
| *Houchins v. SmithKline Beecham Corp.* | ) ) | No. 02-CV-10424-WGY |
| *Teamsters Local No. 35 Health Plans v. SmithKline Beecham Corp.* | ) ) ) | No. 02-CV-10487-WGY |
| *Smithfield Foods, Inc. v. SmithKline Beecham Corp.* | ) ) ) | No. 02-CV-10589-WGY |
| *Franklin v. SmithKline Beecham Corp.* | ) ) | No. 02-CV-10671-WGY |
| *Fox v. SmithKline Beecham Corp.* | ) ) | No. 02-CV-11543-WGY |
| *Kravitz v. SmithKline Beecham Corp.* | ) | No. 02-CV-11806-WGY |

## ESCROW AGREEMENT

This escrow agreement (the "Escrow Agreement") by and among (a) Lead Counsel for

the End-Payor Plaintiffs ("End-Payor Lead Counsel") in *In re Relafen Antitrust Litigation*,

Master File No. 01-CV-12239-WGY (D. Mass.), on behalf of End-Payor Plaintiffs, individually

and on behalf of the End-Payor Class ("End-Payor Plaintiffs"); (b) Defendants GlaxoSmithKline

PLC, SmithKline Beecham Corporation, d/b/a GlaxoSmithKline, Beecham Group PLC and

47233

1

SmithKline Beecham PLC (collectively "GSK"); and (c) "U.S. Bank National Association, a national banking association" as escrow agent (the "Escrow Agent") is entered into in connection with the Amended Stipulation and Agreement of Settlement dated as of July 1, 2004 (the "Settlement Agreement" or "Stipulation") and replaces a prior Escrow Agreement between the parties dated May 20, 2004:

1.      End-Payor Plaintiffs and GSK, by and through their respective counsel, have entered into the Settlement Agreement wherein the above parties agree, subject to final approval of the Court, that the above action be dismissed with prejudice against GSK, in exchange for, inter alia, payment in the amount of Seventy-Five Million Dollars ($75,000,000) in cash, minus the SHP Group Initial Payment, as set forth in the Settlement Agreement.

2.      The parties hereto are entering into this Escrow Agreement in order to resolve the above-referenced litigation, and to effectuate the terms of the Settlement Agreement as between the parties to it.

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and considerations therein, the parties agree as follows:

(a)      Pursuant to and in accordance with the Settlement Agreement, GSK will transfer to the Escrow Agent Sixty-Seven Million Dollars ($67,000,000)(the "Settlement Fund") in cash no later than July 12, 2004, which shall be segregated into a Consumer Settlement Pool and a TPP Settlement Pool in accordance with paragraph 9 of the Settlement Agreement.

(b)      The Escrow Agent shall cause the Settlement Fund to be invested and reinvested, as directed by End-Payor Lead Counsel, in short-term United States Agency or Treasury Securities (or a mutual fund invested solely in such instruments) or other similar short-term United States government obligations, until the Settlement Agreement is deemed to have

47233

become effective in accordance with Paragraphs 7 and 8 of the Settlement Agreement. The Escrow Agent, unless otherwise directed by End-Payor Lead Counsel, intends to invest the Settlement Fund in the First American Funds Government Obligations Fund referred to in Exhibit 1 to this agreement. Once the Settlement Agreement is deemed to have become effective, the Settlement Fund shall be invested in like debt securities as directed by End-Payor Lead Counsel. The term of any such investment shall not exceed ninety days. All interest earned on the Settlement Fund shall become part of the Settlement Fund and be distributed as part of the Settlement Fund. Any losses on the Settlement Fund shall be borne by the Settlement Fund and shall not be recoverable from GSK. The Escrow Agent shall not be liable for any losses resulting from any depreciation in the market value of any such investments (unless the loss is attributable to a failure to adhere to the investment limitations defined in this paragraph).

(c)     End-Payor Lead Counsel are authorized to appoint an administrator (and any successor) for the Settlement Fund within the meaning of Treasury Regulation Section 1.468B-2(k)(3) (the "Escrow Administrator"). End-Payor Lead Counsel shall be responsible for assuring that the Escrow Administrator qualifies as an "Administrator" of the Settlement Fund within the meaning of Treasury Regulation Section 1.468B-2(k)(3) and is performing its duties hereunder. Any reasonable and necessary fees and expenses of the Escrow Administrator, or any CPA or tax advisor retained by the Escrow Administrator in connection with the administration of the Settlement Fund to provide assistance, preparation, and/or legal advice regarding tax estimates and tax returns, shall be paid out of the Settlement Fund.

(d)     Following preliminary approval by the Court of the settlement, the Escrow Administrator shall promptly take all steps necessary so that the Settlement Fund qualifies as a "Qualified Settlement Fund" within the meaning of Treasury Regulation Section 1.468B-1.

47233

These steps include, without limitation, the following:

(1)　　The Escrow Administrator will promptly prepare a "Regulation Section 1.468B-3 Statement" fulfilling the requirements of Treasury Regulation Section 1.468B-3(e) on behalf of GSK and promptly provide copies to GSK's counsel for review and approval.

(2)　　The Escrow Administrator will promptly prepare and attach to the Settlement Fund's timely filed income tax return for the taxable year 2004, in which the Settlement Fund is treated as coming into existence, a "Regulation Section 1.468B-1 Relation Back Election" that satisfies the requirements of Treasury Regulation Section 1.468B-1(j) for execution by GSK and the Escrow Administrator. The Escrow Administrator will promptly forward a copy of the "Regulation Section 1.468B-1 Relation Back Election" to GSK's counsel within 30 days after the date hereof.

(3)　　The Escrow Administrator will timely prepare and timely file on behalf of the Settlement Fund (i) federal tax returns, including without limitation information returns in accordance with Treasury Regulation Section 1.468B-2 and the other provisions of the Internal Revenue Code of 1986, as amended (the "Code"), and (ii) all necessary state, local and foreign tax returns.

(4)　　Notwithstanding any effort, or failure, of the Escrow Administrator and the parties hereto to treat the Settlement Fund as a "Qualified Settlement Fund" within the meaning of Treasury Regulation Section 1.468B-1 effective as of the date hereof, any additional tax liability, interest payable to any taxing authority, or penalties incurred by GSK resulting from income earned by the Settlement Fund (or the receipt of any payment under this paragraph 2(d)(4)) shall be reimbursed from the Settlement Fund in an amount that will make GSK whole on an after-tax basis within ten (10) days after GSK's written request to

47233

4

the Escrow Agent, a copy of which shall be provided simultaneously to End-Payor Lead Counsel.

(e)     Upon written authorization from End-Payor Lead Counsel, the Escrow Agent is authorized to withdraw from the Settlement Fund monies for payment of:  (i) the costs of notice to the Class and fees and expenses related to the administration of the settlement, as ordered by the Court and after notice to GSK and End-Payor Lead Counsel; (ii) all applicable federal, state, local or foreign taxes and any interest or penalties thereon which the Settlement Fund owes or is estimated to owe; (iii) all professional fees and expenses of a CPA or tax advisor retained in connection with the administration of the Settlement Fund to provide assistance, preparation, and/or advice regarding the tax estimates and tax returns referred to herein; (iv) any reimbursements to GSK as described in subparagraph 2(d)(4); (v) any fees and costs as awarded by the Court, including attorneys' fees and expenses and any incentive award for the Plaintiffs as provided for in the Settlement Agreement, or any other disbursement ordered by the Court; (vi) distribution of funds to the Claims Administrator for purposes of making payment to claimants in accordance with the Stipulation; and (vii) all other payments or distributions pursuant to the Stipulation or order of the Court.  All orders of the Court awarding fees or costs or otherwise authorizing a payment or distribution from the Settlement Fund must be provided by End-Payor Lead Counsel to the Escrow Agent.

(f)     The Escrow Agent may sell or present for redemption any investment described in paragraph 2(b) above, whenever it shall be necessary in order to provide funds to meet any payment required pursuant to this Escrow Agreement or the settlement documentation.

(g)     End-Payor Lead Counsel shall have the authority to appoint a Successor Escrow Agent and to direct that all funds be transferred to the Successor Escrow Agent, which Successor Escrow Agent shall not be GSK or an affiliate of GSK.  The Escrow Agent or

47233

5

Successor Escrow Agent shall distribute the Settlement Fund in accordance with the terms of the Settlement Agreement and any applicable Court orders.

(h)     In the event the Settlement Agreement is terminated in accordance with paragraph 8 thereof or is modified in accordance with paragraph 11 thereof, the Escrow Agent shall, subject only to the expiration of any time deposit investment(s) not to exceed ninety days, return to GSK (1) in the case of termination, the remaining Settlement Fund including all interest thereon, less any taxes, costs, expenses or refund referred to in paragraph 21 of the Settlement Agreement, or (2) in the case of modification, an amount calculated in accordance with the terms of paragraph 11 of the Settlement Agreement including any net income attributable to that amount, within five (5) days of written notice to the Escrow Agent by End-Payor Lead Counsel and counsel for GSK.

(i)     The Escrow Agent may rely upon any notice, certificate, instrument, request, paper or other documents reasonably believed by it to be genuine and to have been made, sent or signed by counsel for the respective party or parties in accordance with this Escrow Agreement, and shall not be liable for any action taken or omitted by it, consistent with the terms hereof, in connection with the performance by it of its duties pursuant to the provisions of this Escrow Agreement, except for its own default, negligence or breach of the terms of this Escrow Agreement.

(j)     The Escrow Agent's acceptance and administration of the Settlement Fund shall constitute the submission of the Escrow Agent to the jurisdiction of the Court in the above-described litigation for the purpose of carrying out this Escrow Agreement.

(k)     The Escrow Agent has been appointed in compliance with this Escrow Agreement and is subject to the orders of the Court.

47233

(l)     This Escrow Agreement shall be governed by and interpreted according to the substantive laws of the Commonwealth of Pennsylvania, without reference to choice-of-law principles; provided, however, that with respect to tax matters, this Escrow Agreement shall be governed and interpreted according to federal law.

(m)     The Escrow Agent is and shall be independent, and neither GSK nor the End-Payor Plaintiffs shall have any authority whatever relative to the investment of the Settlement Fund, provided that as parties hereto, GSK and the End-Payor Plaintiffs shall be entitled to institute actions to compel or require performance by the Escrow Agent of its obligations hereunder. The Escrow Agent hereby agrees to submit to the jurisdiction and venue of the Court with respect to issues relating to the Settlement Fund for purposes of enforcement, clarification or amendment of the provisions of this Escrow Agreement, and to comply with all directions given by that Court.

(n)     The Escrow Agent may be removed from this Escrow Agreement at any time and thereby become discharged from the obligations hereby created subsequent to the date of discharge, by notice in writing given to the Escrow Agent by End-Payor Lead Counsel not less than thirty (30) days before such removal is to take effect.

(o)     The Escrow Agent shall not charge any fees to administer the Escrow Account, or be reimbursed for out-of-pocket costs, except for a one-time administration fee of $250.  The fee  payable to the Escrow Agent under this paragraph 2(o) shall constitute a direct charge against the Settlement Fund.  The Escrow Agent is authorized to, and may, as approved by the undersigned counsel, disburse to itself, from the Settlement Fund,  the amount of the fee due and payable hereunder. The Escrow Agent shall, in accordance with paragraph 2(p) below, notify the undersigned counsel of any intent to disburse from the Settlement Fund to itself and

47233

7

shall furnish the undersigned counsel copies of all related invoices and other statements at least five (5) business days prior thereto.

(p)     Copies of all notices and correspondence sent pursuant to this Escrow Agreement shall be served by U.S. mail or electronically upon all undersigned counsel and the Escrow Agent, until such time as the Settlement becomes effective in accordance with the Settlement Agreement.  Upon the Settlement becoming effective, GSK's interest in the Settlement Fund shall cease in its entirety, and after such time, copies of such notices and correspondence shall be served only on End-Payor Lead Counsel.

(q)     The Escrow Agent shall, upon request of any party, advise counsel for the parties of any maturities, conversion privileges, and other matters of a like manner concerning the investments held in accordance with this agreement, until such time as the Settlement becomes effective in accordance with the Settlement Agreement.  After such time, only End-Payor Lead Counsel shall be advised on any such maturities, conversion privileges and other such matters concerning the investments held in accordance with this agreement.

(r)     The Escrow Agent shall furnish to counsel for the parties, upon their request, monthly statements of transactions certified by the Escrow Agent, which include without limitation deposits made, interest earned and disbursements made from the Settlement Fund, until such time as the Settlement becomes effective in accordance with the Settlement Agreement.  After such time, such statements shall be furnished only to End-Payor Lead Counsel.

(s)     The parties reserve the right to modify this Escrow Agreement upon written agreement of all parties other than the Escrow Agent, except any modification which shall affect the duties or responsibilities of the Escrow Agent may be made only upon agreement

47233

8

of all parties including the Escrow Agent, until such time as the Settlement becomes effective in

accordance with the Settlement Agreement.  After such time, only the written authorization of

End-Payor Lead Counsel shall be required for modification except any modification which shall

affect the duties or responsibilities of the Escrow Agent in which case, modification requires

written agreement of End-Payor Lead Counsel and the Escrow Agent.

(t)     The Escrow Agent shall treat the fact of the Settlement and the Settlement

Agreement referred to herein, as well as all facts or other information pertaining to the

Settlement, as confidential and shall not disclose or use such information in any way other than

as necessary to fulfill its role as Escrow Agent.

(u)     This Escrow Agreement may be signed by all parties on separate copies,

including facsimile copies, and shall have full force and effect when all parties have signed one

of the copies.

3.     This Escrow Agreement shall replace the Escrow Agreement executed by the

parties on May 20, 2004 and such prior Escrow Agreement shall be considered null and void.

Dated:  July 1, 2004

Assented and agreed by and
among:

**DECHERT, LLP**


By:     _____
        Joseph A. Tate, Esq.
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA  19103-2793
Tel:  (215) 994-4000
Fax:  (212) 994-2222

*Counsel for GlaxoSmithKline PLC, SmithKline*
*Beecham Corporation, d/b/a GlaxoSmithKline,*

47233

9

***Beecham Group PLC and SmithKline Beecham,
PLC***
**HEINS MILLS & OLSON, P.L.C.**

By: _____
      Alan I. Gilbert, Esq.
80 South Eighth Street
3550 IDS Center
Minneapolis, MN  55402
Tel: (612) 338-4605
Fax: (612) 338-4692

**-AND-**

**MILBERG WEISS BERSHAD & SCHULMAN
LLP**

By: _____
      J. Douglas Richards
One Pennsylvania Plaza
New York, NY  10119
Tel:  (212) 594-5300
Fax: (212) 868-1229

**-AND-**

**MILLER FAUCHER AND CAFFERTY LLP**

By: _____
      Patrick E. Cafferty
101 North Main Street, Suite 450
Ann Arbor, MI  48104
Tel: (734) 769-2144
Fax:  (734) 769-1207

**-AND-**
47233

**SPECTOR ROSEMAN & KODROFF PC.**


By: _____
     Eugene A. Spector
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Tel: (412) 642-2300
Fax:  (412) 642-2309

*END-PAYOR LEAD COUNSEL*


**HAGENS BERMAN LLP**


By: _____
     Thomas M. Sobol
One Main Street, 4th Floor
Cambridge, MA  02142
Tel: (617) 482-3700
Fax:  (617) 823-8800

*END PAYOR LIAISON COUNSEL*



**U.S. BANK NATIONAL ASSOCIATION**


By:_____
     U.S. BANK NATIONAL ASSOCIATION
     Thomas Caruth, Vice President
     EP-MN WS3C
     60 Livingston Avenue
     St. Paul, MN 55107

Dated: July _____, 2004

*Escrow Agent*

47233

**Exhibit 1**

Form Letter F2004-1B eff 9/21/01
**AUTOMATIC MONEY MARKET INVESTMENTS**
**INVESTMENT AUTHORIZATION LETTER**

In the absence of specific written direction to the contrary, U.S. Bank National Association, is hereby directed to invest and reinvest proceeds and other available moneys in the following funds as permitted by the operative documents.  Please mark one space with an **X** for the investment vehicle selection, and sign below.

a.   _____   First American Prime Obligations Fund (Class Y)

b.   _____   First American Treasury Obligations Fund (Class Y)

c.   ___X___   First American Government Obligations Fund (Class Y)

d.   _____   First American Tax Free Obligations Fund (Class Y)

SEE FIRST AMERICAN FUNDS, INC. PROSPECTUS WHICH HAS BEEN PROVIDED. NOTE THAT THE ABOVE FUNDS' INVESTMENT ADVISOR, CUSTODIAN, DISTRIBUTOR AND OTHER SERVICE PROVIDERS AS DISCLOSED IN THE PROSPECTUS ARE U.S. BANK NATIONAL ASSOCIATION AND AFFILIATES THEREOF. SHARES OF THE ABOVE FUNDS ARE NOT DEPOSITS OR OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK INCLUDING U.S. BANK NATIONAL ASSOCIATIONOR ANY OF ITS AFFILIATES, NOR ARE THEY INSURED BY THE FEDERAL DEPOSIT INSURANCE CORPORATION, THE FEDERAL RESERVE BOARD OR ANY OTHER AGENCY.  AN INVESTMENT IN THE FUNDS INVOLVES INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF PRINCIPAL. U.S. Bank National Association will not vote proxies for the First American Funds.  Proxies will be mailed to you for voting.

**Fee Basis**:  Approval of investment of any of these First American mutual funds includes approval of the fund's fees and expenses as detailed in the enclosed prospectus, including advisory, custodial, distribution and other fees.  Fees and expenses are paid to U.S. Bank National Association or other affiliates of U.S. Bank National Association.

# EXHIBIT D
## TO FOURTH AMENDED STIPULATION AND AGREEMENT OF SETTLEMENT

| |
|---|
| Aetna |
| Arkansas Blue Cross and Blue Shield |
| HMO Partners, Inc., d/b/a Health Advantage |
| BlueCross BlueShield Association |
| Blue Cross and Blue Shield of Georgia, Inc. |
| C S Plan of Georgia, Inc. |
| Blue Cross Blue Shield of Kansas City |
| Blue Cross Blue Shield of Louisiana |
| Blue Cross Blue Shield of Missouri |
| Healthy Alliance Life Insurance Co |
| Blue Cross Blue Shield of Nebraska |
| Blue Cross Blue Shield of North Carolina |
| BlueCross BlueShield of Vermont |
| The Vermont Health Plan |
| Blue Cross of California |
| C Life and Health Insurance Co |
| CIGNA |
| Crossroads Acquisition Corp. |
| Blue Cross of Idaho |
| Federated Mutual Insurance Company |
| Geisinger Health Plan |
| Golden Rule Ins. Co. |
| Government Employees Hospital |
| Great-West Life & Annuity Ins. Co. |
| Group Health Cooperative |
| Group Health Incorporated (GHI) |
| Guardian Life Ins. Co. of America |
| Health Alliance Plan |
| Health Net |
| HealthNow New York |
| HealthPartners |
| KPS Health Plan |
| Mail Handlers Benefit Plan |
| Medical Benefits Mutual Life Ins. Co. |
| Medical Mutual of Ohio |
| Mountain State Blue Cross Blue Shield |
| Noridian Mutual Insurance Company |
| Oxford Health Plan |
| PacifiCare Health Systems |
| Premera Blue Cross |
| Priority Health |
| Tufts Associated HMO, Inc. |
| UnitedHealth Group |

48993

43

| |
|---|
| Vista Healthplan, Inc. |
| Vista Heathplan of South Florida, Inc |
| Unicare Life & Health Insurance Co. |
| Unicare Health Ins. Co. of The Midwest |
| Unicare Health Plans |
| Unicare Health Plans of Texas, Inc. |
| Unicare Health Plans of The Midwest, Inc. |
| Unicare Health Insurance Co. of Texas |
| Verizon |
| Wisconsin Physicians Service Ins. Corp. |
| Blue Cross Blue Shield of Alabama |
| Blue Cross of California |